IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARMSLIST LLC, TORQUELIST LLC, JONATHAN GIBBON, and N. ANDREW VARNEY, III,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC., and INSTAGRAM, LLC,<br><br>Defendants. | Civil Action No. 2:21-cv-1917<br><br>*Electronically filed* |

## NOTICE OF REMOVAL

Defendants Facebook, Inc.[1] ("Facebook") and Instagram, LLC ("Instagram") (collectively "Defendants"), by and through their undersigned counsel and pursuant to 28 U.S.C. §§ 1332(a), 1441 and 1446, file this Notice of Removal of Case No. 21C103063, which was pending in the Court of Common Pleas of Westmoreland County, Pennsylvania.[2] In support of their Notice of Removal, Defendants state as follows:

### INTRODUCTION AND BACKGROUND

1.   On or about August 11, 2021, Plaintiffs Armslist LLC, Torquelist LLC, Jonathan Gibbon, and N. Andrew Varney, III ("Plaintiffs") filed a "Complaint for Declaratory and Injunctive Relief" in the Court of Common Pleas of Westmoreland County, Pennsylvania, styled

---

[1] On October 28, 2021, Facebook, Inc. changed its name to Meta Platforms, Inc. Because Plaintiffs' Complaint was filed prior to the name change and for ease of reference, this Notice of Removal refers to Defendant identified as "Facebook, Inc." in the pleadings as "Facebook, Inc." here.

[2] Counsel for Defendants specially appear for purposes of this notice of removal. This notice shall not be construed as a general appearance or the consent of Defendants to the jurisdiction of the Court, nor as a waiver of any defenses, including on grounds of lack of personal jurisdiction or improper venue.

as *Armslist LLC, Torquelist LLC, Jonathan Gibbon, and N. Andrew Varney, III v. Facebook, Inc. and Instagram, LLC.*, Case No. 21CI03063. The Complaint did not contain a demand for damages.  Exhibit A, Compl., ¶ 1, and pp. 34-40.

2. On September 1, 2021, Plaintiffs filed a Petition to File Amended and Supplemental Complaint. Like the original Complaint, the Amended and Supplemental Complaint sought declaratory judgment and injunctive relief only.  Exhibit B, Am. & Suppl. Compl. ¶ 7, and pp. 37-43.

3. Plaintiffs served the Complaint and Amended and Supplemental Complaint upon Instagram on September 15, 2021, and upon Facebook on September 29, 2021.  Exhibit C, Affidavit of Service upon Defendants, Instagram, LLC and Facebook, Inc.

4. Defendants filed preliminary objections to the Amended and Supplemental Complaint on November 12, 2021.  Exhibit D, Defendants' Preliminary Objections to Plaintiffs' Complaint, pp. 3-5.

5. In response to Defendants' preliminary objections, Plaintiffs filed and served a Second Amended and Supplemental Complaint on December 2, 2021 ("SAC").  Exhibit E, Second Am. & Suppl. Compl.  The SAC added a count for breach of contract (Count Two), and in the alternative, unjust enrichment (Count Three) and promissory estoppel (Count Four). *Id.* at pp. 45, 49, 52, 53.  Counts Two, Three and Four will be collectively referred to herein as Plaintiffs' "Breach of Contract Claims."

6. Further, Plaintiffs' SAC added a request for damages "not to exceed $74,999.99," at Counts Two through Four.  *Id.* at ¶ 254, 274, 294.

7.     Copies of "all process, pleadings, and orders served upon [] defendant" are attached hereto as Exhibits A through F, as required by 28 U.S.C. § 1446(a). Exhibit F contains copies of the state court's orders.

## DIVERSITY JURISDICTION

8.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332, which grants the U.S. District Courts original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ."). This action satisfies all Section 1332(a) requirements.

**Diversity of Citizenship**

**Plaintiffs are citizens of Pennsylvania.**

9.     Plaintiffs Armslist LLC and Torquelist LLC allege that they are Pennsylvania limited liability companies, and the individual Plaintiffs allege that they are citizens of Pennsylvania. Exhibit E, ¶¶ 1-4.

**Defendants are citizens of Delaware and California.**

10.    Defendant Facebook is a Delaware corporation, with a principal place of business in Menlo Park, CA. *Id.* at ¶ 5. Facebook is therefore a citizen of Delaware and California for the purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business.").

11.    Defendant Instagram is a Delaware limited liability company, with a principal place of business in Menlo Park, CA. Exhibit E, ¶ 6. Instagram is therefore a citizen of Delaware and California for the purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(c)(1).

12. Neither Defendant is a citizen of Pennsylvania. *See* 28 U.S.C. § 1441(b)(2) (prohibiting removal under 28 U.S.C. 1332(b) where any of the defendants in the action are citizens of the State in which the action is brought.)

13. Accordingly, diversity of citizenship exists between the parties.

**The Amount in Controversy Exceeds $75,000, Exclusive of Interest and Costs.**

14. The amount in controversy in this civil action exceeds the sum or value of $75,000, exclusive of interest and costs.

15. Count I of the SAC seeks equitable relief in the form of declaratory and injunctive relief only. Exhibit E, ¶¶ 179-209 and 241-253.

16. Counts II, III and IV, Plaintiffs' Breach of Contract Claims, demand "[d]amages not to exceed $74,999.99."[3]  Exhibit E, ¶¶ 254, 274, 294.

17. Taking the relief sought by Plaintiffs for all the claims in the SAC into account, the amount in controversy exceeds $75,000.00, satisfying the statutory requirement of 28 U.S.C. § 1332(a).

18. Plaintiffs' SAC includes stipulations and verifications that their damages for the Breach of Contract Claims do not exceed $74,999.99.

19. As explained more fully below, Plaintiffs' claim for equitable relief has value that far exceeds the two-cent difference between the stipulated damages of $74,999.99 and the jurisdictional requirement that the amount in controversy exceed $75,000.00.

> **Plaintiffs' Request for Equitable Relief in Count One Has a Monetary Value of More Than Two Cents.**

---

[3] In acknowledging that Plaintiffs' SAC pleads facts establishing this Court's subject matter jurisdiction under 28 U.S.C. § 1332, Defendants in no way concede that Plaintiffs are entitled to damages, a declaratory judgment, injunctive relief, attorneys' fees, costs, or any other relief whatsoever.

20. When determining the amount in controversy, the "Court's task is to examine not just the dollar figure offered by the plaintiff but also her actual legal claims." *Morgan v. Gay*, 471 F.3d 469, 475 (3d Cir. 2006).

21. Also, the court determines the amount in controversy from the complaint itself. *See Angus v. Shiley, Inc.*, 989 F.2d 142, 145 (3d Cir. 1993), citing, *Horton v. Liberty Mutual Ins. Co.,* 367 U.S. 348, 353, 81 S. Ct. 1570, 1573, 6 L.Ed.2d 890 (1961); and *see also Samuel-Bassett v. Kia Motors,* 357 F.3d 392, 398-99 (3d Cir. 2004) ("When the amount in controversy is not specified in the complaint, the court must assess the claims and attempt to translate those claims into monetary sums.").

22. The Third Circuit recognizes that equitable claims have monetary value that are to be considered when determining the amount in controversy. For instance, in *Spock v. David* the Third Circuit held that rights of free speech and free assembly have value, can be considered in deciding whether a claim for equitable relief meets the required jurisdictional amount, and are sufficiently capable of meeting the jurisdictional amount. *Spock v. David*, 469 F.2d 1047, 1052 (3d Cir. 1972).[4] "Free speech is almost by definition, worth more than $10,000." *Spock*, 469 F.2d at 1052.

### Plaintiffs' Allegations Demonstrate That Their Equity Claims in Count One Have Value in Excess of One Cent.

23. Here, Plaintiffs specifically allege that Armslist's website sells advertisements and premium memberships. *Id.* at ¶ 33 ("Armslist makes money by selling advertisements on its

---

[4] The statute at issue in *Spock v. David* was 28 U.S.C. § 1331, which had a $10,000 amount in controversy requirement in 1972. *Spock*, 469 F.2d at 1050. The court's reasoning for finding the amount in controversy satisfied the court's original jurisdiction requirements under Section 1331 apply equally to Section 1332's amount in controversy requirements.

website.  In addition, Armslist sells premium membership designations for users and businesses that frequently use the site. . . .").

24. Armslist, Mr. Gibbon, and Mr. Varney began using Facebook in 2007 and Instagram in 2012-2013 to communicate with friends, family, and potential users of Armslist." *Id.* at ¶ 57, 108.

25. Similarly, Mr. Gibbon and Torquelist started using Facebook and Instagram around 2013 to communicate with potential users of Torquelist's services.  *Id.* at 67, 118.

26. Plaintiffs also allege that by removing their Facebook and Instagram accounts, Defendants are precluding all of them from exercising their rights of freedom of expression and by implication reaching potential users of their websites.  *See e.g.* Exhibit E, at Count I, ¶ 187 ("This censorship and ban [from Facebook and Instagram] violate Art. 1, § 7 of Pennsylvania's Constitution's guarantee that and [sic] every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty.").

27. Among the equitable relief sought, Plaintiffs request that Facebook and Instagram be permanently enjoined from locking their accounts and precluding them from participating in the national debate on firearms and automotive policy on Facebook and Instagram. *Id.* at ¶¶ 241-253.

28. In sum, Plaintiffs seek to regain their use of Facebook and Instagram to exercise their freedom of speech and to drive users to their websites.  According to *Spock* and their own pleading, this equitable relief has a monetary value **in addition** to Plaintiffs' Breach of Contract Claims at Counts Two through Four.

29. Further, it is reasonable to conclude that Plaintiffs' claims for equitable relief in Count One have value of at least $10,000 as found by the *Spock* court and greater than the two-

cent difference between the amount stipulated by Plaintiffs for their Breach of Contract Claims and the statutory requirement.

30. Accordingly, the value of Plaintiffs' equity claims in Count One places the amount in controversy above $75,000 in this matter. *See also Samuel-Bassett*, 357 F.3d at 146 (explaining that the amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated).

### Plaintiffs' Attempts to Stipulate That the Amount in Controversy Is No Greater Than $74,999.99 Does Not Bar Removal

31. Plaintiffs have attached unilateral stipulations to their SAC attempting to limit the amount in controversy in this matter to no greater than $74,999.99—the amount of their damages demand for their Breach of Contract Claims. However, the stipulations fail to include Plaintiffs' claims for equitable relief in Count One. Therefore, the stipulations do not bar removal.

32. Courts have recognized that stipulations seeking to limit the amount in controversy may be considered, but they are not dispositive and do not preclude removal. *See McCoy v. Erie Ins. Co.*, 147 F. Supp. 2d 481, 486 (S.D. W. Va. 2001) (acknowledging in *dicta* that pre-removal stipulations, rather than post-removal stipulations, may be an important consideration but that they do not preclude removal).

33. Moreover, when stipulating to an amount in controversy, plaintiffs must specify if the agreed upon cap includes equitable relief, as well as damages, where both are alleged as they are here. S*ee Rabel v. Huntington Nat'l Bank*, Civ. Action No. 2:14-cv-25818, 2015 WL 3540660, *5-7 (S.D. W. Va. 2015) (holding that the amount in controversy exceeded $75,000 despite plaintiff stipulating to not seeking or accepting an amount greater than $75,000 where the stipulation did not specify whether it encompassed both damages and equitable relief).

34. Like *Rabel*, Plaintiffs' stipulation does not limit the amount in controversy because it does not specify whether it encompasses both Plaintiffs' damages and equitable relief and therefore, only limits Plaintiffs' referenced damages recovery. *See* stipulations attached to Exhibit E ("Plaintiffs swear and stipulate the amount of controversy in this case . . . is no greater than $74,999.99, plus interest and costs, regardless of the amount of any judgment and/or verdict that might be returned in Plaintiffs' favor. . . .").

35. "Absent an explicit statement that the Stipulation also encompasses equitable relief, the Stipulation only operates to limit Plaintiff[s'] potential damages recovery." *Rabel*, 2015 WL 35400660, *7. Because Plaintiffs' equitable claims also have value of greater than one cent, Plaintiffs' Stipulations do not preclude removal.

36. Accordingly, the amount in controversy alleged in Plaintiffs' SAC for breach of contract damages not exceeding the sum or value of $74,999.99, plus Plaintiffs' equitable relief claim in Count One satisfy the amount in controversy requirement in 28 U.S.C. § 1332(a).

## NO NEED FOR CONSENT TO REMOVAL

37. Consent to removal is not required of any other defendants. *See* 28 U.S.C. § 1446(b)(2)(A).

## TIMELINESS

38. This notice of removal is being filed within 30 days of December 2, 2021, the date on which Defendants were served with Plaintiffs' SAC adding the Breach of Contract Claims for the first time. *See* 28 U.S.C. § 1446(b)(3) (". . . if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading . . . from which it may first be ascertained that the case is one which is or has become removable.").

## VENUE FOR REMOVAL

39. Because this action is brought in the Court of Common Pleas of Westmoreland County, Pennsylvania, venue for purposes of removal is proper in this Court under 28 U.S.C. § 118(c) as this District embraces Westmoreland County, Pennsylvania, the place where the removed action has been pending. *See* 28 U.S.C. §§ 1441(a) and 1446(a).[5]

## NOTICE OF FILING OF NOTICE OF REMOVAL

40. In accordance with 28 U.S.C. § 1446(d), Defendants will promptly provide written notice to counsel of record for Plaintiffs and will promptly file a copy of this Notice of Removal with the Court of Common Pleas of Westmoreland County, Pennsylvania.

## CONCLUSION

41. Based upon the foregoing, all requirements for diversity and removal jurisdiction have been met.

WHEREFORE, Defendants Facebook and Instagram remove this action to this Court for all future proceedings.

Respectfully submitted,

ECKERT SEAMANS CHERIN & MELLOTT, LLC

*/s/ Audrey K. Kwak*
Jack B. Cobetto
Pa ID No. 53444
Audrey K. Kwak
Pa ID No. 200527
Carolyn O. Boucek
Pa. ID No. 324410

U.S. Steel Tower
600 Grant Street, 44th Floor

---

[5] However, as noted above (n.2 *supra*), this Notice should not be construed as a waiver of a defense of improper venue.

        Pittsburgh, PA 15219
        Telephone: (412) 566-6000
        jcobetto@eckertseamans.com
        akwak@eckertseamans.com
        cboucek@eckertseamans.com

ORRICK HERRINGTON & SUTCLIFFE LLP

Kelly A. Williams
Pa. ID. No. 74872
2121 Main Street
Wheeling, WV 26003-2809
304-238-2902
kelly.williams@orrick.com

*Counsel for Defendants Facebook, Inc. and Instagram, Inc.*

Dated: December 30, 2021

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 30, 2021, I served a true and correct copy of the foregoing Notice of Removal was served upon the following counsel of record by electronic mail and U.S. first-class mail, postage pre-paid:

Charles A. Hayes
cahayes@wegmanlaw.com
Christopher A. Holecek
CAHolecek@wegmanlaw.com
Jay R. Carson
JRCarson@wegmanlaw.com
Wegman Hessler
6055 Rockside Woods Blvd., Ste. 200
Cleveland, Ohio 44131

/s/ Audrey K. Kwak
Jack B. Cobetto
Audrey K. Kwak
Carolyn O. Boucek

ECKERT SEAMANS CHERIN & MELLOTT, LLC
U.S. Steel Tower
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
Telephone: (412) 566-6000
jcobetto@eckertseamans.com
akwak@eckertseamans.com
cboucek@eckertseamans.com

Kelly A. Williams

ORRICK HERRINGTON & SUTCLIFFE LLP
2121 Main Street
Wheeling, WV 26003-2809
304-238-2902
kelly.williams@orrick.com

*Counsel for Defendants Facebook, Inc. and Instagram, Inc.*

101154892.1