# EXHIBIT D

## IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, PENNSYLVANIA

| | |
|---|---|
| ARMSLIST LLC; TORQUELIST, LLC; JONATHAN GIBBON; and N. ANDREW VARNEY, III, | CIVIL DIVISION |
| Plaintiffs, | Case No. 21CI03063 JUDGE HATHAWAY |
| v. | **DEFENDANTS' PRELIMINARY OBJECTIONS TO PLAINTIFFS' COMPLAINT** |
| FACEBOOK, INC., and INSTAGRAM, INC., | |
| Defendants. | |

Filed on Behalf of Defendants FACEBOOK, INC. and INSTAGRAM, INC.

Counsel of Record for these Parties:

**NOTICE TO PLEAD**

To Plaintiffs:

You are hereby notified to file a written response to the enclosed Preliminary Objections to Plaintiff's Complaint within twenty (20) days of service hereof or a judgment may be entered against you.

*/s/ Audrey K. Kwak*
Counsel for Facebook, Inc. and Instagram, Inc.

Jack B. Cobetto
(jcobetto@eckertseamans.com)
Pa ID No. 53444

Audrey K. Kwak
(akwak@eckertseamans.com)
Pa ID No. 200527

Carolyn O. Boucek
(cboucek@eckertseamans.com)
Pa. ID No. 324410

ECKERT SEAMANS
CHERIN & MELLOTT, LLC
U.S. Steel Tower
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
(412) 566-6000

Dated: Nov. 12, 2021

**IN THE COURT OF COMMON PLEAS OF**
**WESTMORELAND COUNTY, PENNSYLVANIA**

| | |
|---|---|
| ARMSLIST LLC; TORQUELIST, LLC; JONATHAN GIBBON; and N. ANDREW VARNEY, III | Case No. 21CI03063 |
| | JUDGE HATHAWAY |
| Plaintiffs, | |
| v. | |
| FACEBOOK, INC. and INSTAGRAM, INC.. | |
| Defendants. | |

## PRELIMINARY OBJECTIONS TO PLAINTIFFS' COMPLAINT

Pursuant to Rule 1028 of the Pennsylvania Rules of Civil Procedure, and Local Rule W1028(c) of the Court of Common Pleas of Westmoreland County, Defendants Facebook, Inc. ("Facebook")[1] and Instagram, Inc. ("Instagram") by and through their counsel, Eckert Seamans Cherin & Mellott LLC, files the following Preliminary Objections to Plaintiffs' Complaint, stating the following in support:

1.      This is a civil case in which Plaintiffs Armslist LLC, Torquelist LLC, Jonathan Gibbon, and N. Andrew Varney, III challenge Defendants Facebook and Instagram's alleged restriction and/or removal of Plaintiffs' accounts.

2.      Plaintiffs' Complaint contains one count requesting declaratory judgment and eleven injunctions against Facebook and Instagram for alleged violations of Art. 1, §7 of Pennsylvania's Constitution. *See* Compl. at ¶ 147.

---

[1] On October 28, 2021, Facebook, Inc. changed its name to Meta Platform, Inc. Because the Complaint was filed prior to the name change and for ease of reference, this motion refers to Defendant identified as "Facebook, Inc." in the pleadings as "Facebook, Inc." here.

3. These preliminary objections are filed pursuant to Pa. R.C.P. No. 1028(a)(1) and Pa. R.C.P. No. 1028(a)(4).

4. Under Pa. R.C.P. 1028(a)(1) and Pa. R.C.P. 1006(e), improper venue may be raised by preliminary objection.

5. Under Pa. R.C.P. 1028(a)(4), preliminary objections may be raised regarding the legal insufficiency of a pleading.

### FIRST OBJECTION: PRELIMINARY OBJECTION PURSUANT TO PA. R.C.P. NO. 1028(a)(1) FOR IMPROPER VENUE

6. In Pennsylvania, courts enforce forum selection clauses where "those clauses are clear and unambiguous." *O'Hara v. First Liberty Ins. Corp.,* 984 A.2d 938, 941–42 (Pa. Super. Ct. 2009) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991)).

7. The Pennsylvania Supreme Court has specified that "a court in which venue is proper and which has jurisdiction should decline to proceed with the cause when the parties have freely agreed that litigation shall be conducted in another forum and where such agreement is not unreasonable at the time of litigation." *Cent. Contracting Co. v. C. E. Youngdahl & Co.*, 418 Pa. 122, 133 (1965).

8. Here, the Plaintiffs entered into unambiguous agreements with Defendants Facebook and Instagram to litigate claims against either of them in the United States District Court for the Northern District of California or state court in San Mateo County, California. *See* Declaration of Jenny Pricer in Support of Defs.' Brief in Support of Prelim. Objs. ("Pricer Decl.") at ¶¶ 3–7; Pricer Decl., Exs. 1–2.

9. Because Plaintiffs, along with Facebook and Instagram, have freely agreed that these claims shall be litigated in the U.S. District Court for the Northern District of California or in state court in San Mateo County, California, this Court should dismiss Plaintiffs' Complaint for

11/12/2021 10:47 PM Westmoreland County  21CI03063

refiling (should Plaintiffs choose to do so) in the appropriate forum.

## SECOND OBJECTION: PRELIMINARY OBJECTION PURSUANT TO PA. R.C.P. NO. 1028(a)(4) IN THE NATURE OF A DEMURRER

10.     Section 230 of the Communications Decency Act provides that "[n]o provider or user of an interactive computer service shall be held liable on account of—(A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected[.]" 47 U.S.C. § 230(c)(2)(A).

11.     Section 230 specifies that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3).

12.     Section 230 defines an interactive computer service provider as "any information service, system, or access software providers that provides or enables computer access by multiple users to a computer server…" 47 U.S.C. § 230(f)(2).

13.     Defendant Facebook is described within the Complaint as "a social media platform that allows users to share comments, photos, videos, weblinks and other information with other Facebook users who have chosen to receive such posts ("Friends")." Compl. ¶ 34.

14.     Defendant Instagram is described within the Complaint as "a social media platform that allows users to share comments, photos, videos, weblinks and other information with other Instagram users who have chosen to receive such posts ("Followers")." *Id.* ¶ 84.

15.     Both Defendants are interactive computer service providers as defined in Section 230.

16.     Plaintiffs bring suit against Defendants Facebook (*see id.* ¶¶ 53–57) and Instagram

(*see id.* ¶¶ 103–10) for Facebook and Instagram's alleged removal and/or regulation of the Plaintiff's accounts on the Facebook and Instagram platforms.

17.    Such removal and/or regulation is explicitly protected by Section 230, which shields interactive computer service providers from liability for "any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected[.]" 47 U.S.C. § 230(c)(2)(A).

18.    Since Section 230 bars suit against an interactive computer service provider who in good faith regulates content on their platform, the Complaint should be dismissed.

### THIRD OBJECTION: PRELIMINARY OBJECTION PURSUANT TO PA. R.C.P. NO. 1028(a)(4) IN THE NATURE OF A DEMURRER

19.    The Pennsylvania Constitution guarantees individuals free speech in Art. 1, § 7.

20.    However, this provision is only operable against private companies when they have held themselves out as public forums. *W. Pa. Socialist Workers 1982 Campaign v. Conn. Gen. Life Ins. Co.*. 515 A.2d 1331, 1333–34 (Pa. 1986) (plurality opinion).

21.    The Facebook and Instagram services have not held themselves out as public forums, rather, like the email servers addressed in *Cyber Promotions, Inc. v. Am. Online, Inc.,* the services are limited forums available to users of the services, not the public at large. 948 F.Supp. 436, 446 (E.D. Pa. 1996).

22.    Because the Facebook and Instagram services are not public forums, they are not subject to suit for violation of the Pennsylvania Constitution's free speech guarantee and the claims against them should be dismissed.

WHEREFORE, Defendants Facebook and Instagram respectfully request that this Court enter an Order sustaining its Preliminary Objections and dismissing Plaintiffs' Complaint in its entirety. A Brief in Support of these Preliminary Objections and a Proposed Order of Court are attached.

Dated: November 12, 2021

Respectfully submitted,

*/s/ Audrey K. Kwak*
Jack B. Cobetto
Pa ID No. 53444
Audrey K. Kwak
Pa ID No. 200527
Carolyn O. Boucek
Pa. ID No. 324410


ECKERT SEAMANS CHERIN & MELLOTT, LLC
U.S. Steel Tower
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
Telephone: (412) 566-6000
Email: jcobetto@eckertseamans.com

*Counsel for Defendants Facebook, Inc. and Instagram, Inc.*

11/12/2021 10:47 PM Westmoreland County   21CI03063

**IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, PENNSYLVANIA**

| | |
|---|---|
| **ARMSLIST LLC, et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | )   CIVIL DIVISION |
| **v.** | ) |
| | )   Case No. 21CI03063 |
| **FACEBOOK, INC. et al.,** | )   JUDGE HATHAWAY |
| | ) |
| **Defendants.** | ) |
| | ) |
| | ) |
| | ) |

## DECLARATION OF JENNY PRICER

I, Jenny Pricer, do hereby declare:

1.     I am a Case Manager on the eDiscovery & Information Governance team at Facebook, Inc. ("Facebook").

2.     In my job duties as a Case Manager, I am familiar with Facebook and its subsidiaries including Instagram, Inc. and their relevant policies and procedures, business activities, and company holdings.

3.     Every person who registers for, uses, and continues to use a Facebook account must agree to be bound by Facebook's Terms of Service.

4.     A true and accurate copy of Facebook's current Terms of Service is attached hereto as Exhibit 1.

5.     Plaintiffs Jonathan Gibbon and N. Andrew Varney III were required to review and agree to be bound by the Terms of Service prior to registering any account on the Facebook platform, and were governed by those Terms of Service when they created their related business pages for Armslist LLC and Torquelist LLC.

6.      Further, every person who registers for, uses, and continues to use an Instagram account must agree to be bound by Instagram's Terms of Use.

7.      A true and accurate copy of Instagram's current Terms of Use is attached hereto as Exhibit 2.

8.      Plaintiffs Jonathan Gibbon and N. Andrew Varney III were required to review and agree to be bound by the Terms of Use prior to registering any account on the Instagram platform.

9.      Plaintiffs were again required to review and agree to be governed by those Terms of Use when they created their related business Instagram accounts for Armslist LLC and Torquelist LLC.

I declare, certify, verify, and state under the penalty of perjury of the laws of the United States of America, and pursuant to 28 USC § 1746, that the foregoing is true and correct. Executed on this the 12 day of November, 2021.


                                        _/s/ Jenny Pricer_____
                                        Jenny Pricer

2

**EXHIBIT 1: FACEBOOK TERMS OF SERVICE**

*The Facebook company is now Meta. While our company name is changing, we are continuing to offer the same products, including the Facebook app from Meta. Our Data Policy and Terms of Service remain in effect, and this name change does not affect how we use or share data. Learn more about Meta and our vision for the metaverse.*

# Terms of Service

Welcome to Facebook!

Facebook builds technologies and services that enable people to connect with each other, build communities, and grow businesses. These Terms govern your use of Facebook, Messenger, and the other products, features, apps, services, technologies, and software we offer (the Facebook Products or Products), except where we expressly state that separate terms (and not these) apply. These Products are provided to you by Facebook, Inc.

We don't charge you to use Facebook or the other products and services covered by these Terms. Instead, businesses and organizations pay us to show you ads for their products and services. By using our Products, you agree that we can show you ads that we think will be relevant to you and your interests. We use your personal data to help determine which ads to show you.

We don't sell your personal data to advertisers, and we don't share information that directly identifies you (such as your name, email address or other contact information) with advertisers unless you give us specific permission. Instead, advertisers can tell us things like the kind of audience they want to see their ads, and we show those ads to people who may be interested. We provide advertisers with reports about the performance of their ads that help them understand how people are interacting with their content. See Section 2 below to learn more.

KEKER\3305\FBXARMS\1763278.v1-11/3/21

Our Data Policy explains how we collect and use your personal data to determine some of the ads you see and provide all of the other services described below. You can also go to your settings at any time to review the privacy choices you have about how we use your data.

# 1. The services we provide

Our mission is to give people the power to build community and bring the world closer together. To help advance this mission, we provide the Products and services described below to you:

Provide a personalized experience for you:

Your experience on Facebook is unlike anyone else's: from the posts, stories, events, ads, and other content you see in News Feed or our video platform to the Pages you follow and other features you might use, such as Trending, Marketplace, and search. We use the data we have - for example, about the connections you make, the choices and settings you select, and what you share and do on and off our Products - to personalize your experience.

Connect you with people and organizations you care about:

We help you find and connect with people, groups, businesses, organizations, and others that matter to you across the Facebook Products you use. We use the data we have to make suggestions for you and others - for example, groups to join, events to attend, Pages to follow or send a message to, shows to watch, and people you may want to become friends with. Stronger ties make for better communities, and we believe our services are most useful when people are connected to people, groups, and organizations they care about.

Empower you to express yourself and communicate about what matters to you:

There are many ways to express yourself on Facebook and to communicate with friends, family, and others about what matters to you - for example, sharing status updates, photos, videos, and stories across the Facebook Products you use, sending messages to a friend or several people, creating events or groups, or adding content to your profile. We have also developed, and continue to explore, new ways for people to use technology, such as augmented reality and 360 video to create and share more expressive and engaging content on Facebook.

KEKER\3305\FBXARMS\1763278.v1-11/3/21

Help you discover content, products, and services that may interest you:

We show you ads, offers, and other sponsored content to help you discover content, products, and services that are offered by the many businesses and organizations that use Facebook and other Facebook Products. Section 2 below explains this in more detail.

Combat harmful conduct and protect and support our community:

People will only build community on Facebook if they feel safe. We employ dedicated teams around the world and develop advanced technical systems to detect misuse of our Products, harmful conduct towards others, and situations where we may be able to help support or protect our community. If we learn of content or conduct like this, we will take appropriate action - for example, offering help, removing content, removing or restricting access to certain features, disabling an account, or contacting law enforcement. We share data with other Facebook Companies when we detect misuse or harmful conduct by someone using one of our Products.

Use and develop advanced technologies to provide safe and functional services for everyone:

We use and develop advanced technologies - such as artificial intelligence, machine learning systems, and augmented reality - so that people can use our Products safely regardless of physical ability or geographic location. For example, technology like this helps people who have visual impairments understand what or who is in photos or videos shared on Facebook or Instagram. We also build sophisticated network and communication technology to help more people connect to the internet in areas with limited access. And we develop automated systems to improve our ability to detect and remove abusive and dangerous activity that may harm our community and the integrity of our Products.

Research ways to make our services better:

We engage in research to develop, test, and improve our Products. This includes analyzing the data we have about our users and understanding how people use our Products, for example by conducting surveys and testing and troubleshooting new features. Our Data Policy explains how we use data to support this research for the purposes of developing and improving our services.

Provide consistent and seamless experiences across the Facebook Company Products:

Our Products help you find and connect with people, groups, businesses, organizations, and others that are important to you. We design our systems so that your experience is consistent and seamless across the different Facebook Company Products that you use. For example, we use data about the people you engage with on Facebook to make it easier for you to connect with them on

5

Instagram or Messenger, and we enable you to communicate with a business you follow on Facebook through Messenger.

Enable global access to our services:

To operate our global service, we need to store and distribute content and data in our data centers and systems around the world, including outside your country of residence. This infrastructure may be operated or controlled by Facebook, Inc., Facebook Ireland Limited, or its affiliates.

Return to top

# 2. How our services are funded

Instead of paying to use Facebook and the other products and services we offer, by using the Facebook Products covered by these Terms, you agree that we can show you ads that businesses and organizations pay us to promote on and off the Facebook Company Products. We use your personal data, such as information about your activity and interests, to show you ads that are more relevant to you.

Protecting people's privacy is central to how we've designed our ad system. This means that we can show you relevant and useful ads without telling advertisers who you are. We don't sell your personal data. We allow advertisers to tell us things like their business goal, and the kind of audience they want to see their ads (for example, people between the age of 18-35 who like cycling). We then show their ad to people who might be interested.

We also provide advertisers with reports about the performance of their ads to help them understand how people are interacting with their content on and off Facebook. For example, we provide general demographic and interest information to advertisers (for example, that an ad was seen by a woman between the ages of 25 and 34 who lives in Madrid and likes software engineering) to help them better understand their audience. We don't share information that directly identifies you (information such as your name or email address that by itself can be used to contact you or identifies who you are) unless you give us specific permission. Learn more about how Facebook ads work here.

We collect and use your personal data in order to provide the services described above to you. You can learn about how we collect and use your data in our Data Policy. You have controls over the

KEKER\3305\FBXARMS\1763278.v1-11/3/21

11/12/2021 10:47 PM Westmoreland County    21CI03063

types of ads and advertisers you see, and the types of information we use to determine which ads we show you. **Learn more**.


Return to top

# 3. Your commitments to Facebook and our community

We provide these services to you and others to help advance our mission. In exchange, we need you to make the following commitments:

1. Who can use Facebook

When people stand behind their opinions and actions, our community is safer and more accountable. For this reason, you must:

- Use the same name that you use in everyday life.

- Provide accurate information about yourself.

- Create only one account (your own) and use your timeline for personal purposes.

- Not share your password, give access to your Facebook account to others, or transfer your account to anyone else (without our permission).

We try to make Facebook broadly available to everyone, but you cannot use Facebook if:

- You are under 13 years old.

- You are a convicted sex offender.

- We've previously disabled your account for violations of our Terms or Policies.

- You are prohibited from receiving our products, services, or software under applicable laws.

2. What you can share and do on Facebook

We want people to use Facebook to express themselves and to share content that is important to them, but not at the expense of the safety and well-being of others or the integrity of our

KEKER\3305\FBXARMS\1763278.v1-11/3/21

community. You therefore agree not to engage in the conduct described below (or to facilitate or support others in doing so):

1. You may not use our Products to do or share anything:
    - That violates these Terms, our **Community Standards**, and <u>other terms and policies</u> that apply to your use of Facebook.
    - That is unlawful, misleading, discriminatory or fraudulent.
    - That infringes or violates someone else's rights, including their intellectual property rights.
2. You may not upload viruses or malicious code or do anything that could disable, overburden, or impair the proper working or appearance of our Products.
3. You may not access or collect data from our Products using automated means (without our prior permission) or attempt to access data you do not have permission to access.

We can remove or restrict access to content that is in violation of these provisions.
If we remove content that you have shared in violation of our Community Standards, we'll let you know and explain any options you have to request another review, unless you seriously or repeatedly violate these Terms or if doing so may expose us or others to legal liability; harm our community of users; compromise or interfere with the integrity or operation of any of our services, systems or Products; where we are restricted due to technical limitations; or where we are prohibited from doing so for legal reasons.

To help support our community, we encourage you to **report** content or conduct that you believe violates your rights (including **intellectual property rights**) or our terms and policies.

We also can remove or restrict access to your content, services or information if we determine that doing so is reasonably necessary to avoid or mitigate adverse legal or regulatory impacts to Facebook.

3. The permissions you give us

We need certain permissions from you to provide our services:

1. <u>Permission to use content you create and share:</u> Some content that you share or upload, such as photos or videos, may be protected by intellectual property laws.

   You own the intellectual property rights (things like copyright or trademarks) in any such content that you create and share on Facebook and the other **Facebook Company**

KEKER\3305\FBXARMS\1763278.v1-11/3/21

11/12/2021 10:47 PM Westmoreland County 21CI03063

Products you use. Nothing in these Terms takes away the rights you have to your own content. You are free to share your content with anyone else, wherever you want.

However, to provide our services we need you to give us some legal permissions (known as a 'license') to use this content. This is solely for the purposes of providing and improving our Products and services as described in Section 1 above.

Specifically, when you share, post, or upload content that is covered by intellectual property rights on or in connection with our Products, you grant us a non-exclusive, transferable, sub-licensable, royalty-free, and worldwide license to host, use, distribute, modify, run, copy, publicly perform or display, translate, and create derivative works of your content (consistent with your privacy and application settings). This means, for example, that if you share a photo on Facebook, you give us permission to store, copy, and share it with others (again, consistent with your settings) such as service providers that support our service or other Facebook Products you use.This license will end when your content is deleted from our systems.

You can delete content individually or all at once by deleting your account. Learn more about how to delete your account. You can download a copy of your data at any time before deleting your account.

When you delete content, it's no longer visible to other users, however it may continue to exist elsewhere on our systems where:

- immediate deletion is not possible due to technical limitations (in which case, your content will be deleted within a maximum of 90 days from when you delete it);

- your content has been used by others in accordance with this license and they have not deleted it (in which case this license will continue to apply until that content is deleted); or

- where immediate deletion would restrict our ability to:
  - investigate or identify illegal activity or violations of our terms and policies (for example, to identify or investigate misuse of our Products or systems);
  - comply with a legal obligation, such as the preservation of evidence; or

KEKER\3305\FBXARMS\1763278.v1-11/3/21

- comply with a request of a judicial or administrative authority, law enforcement or a government agency;

in which case, the content will be retained for no longer than is necessary for the purposes for which it has been retained (the exact duration will vary on a case-by-case basis).

In each of the above cases, this license will continue until the content has been fully deleted.

2. Permission to use your name, profile picture, and information about your actions with ads and sponsored content: You give us permission to use your name and profile picture and information about actions you have taken on Facebook next to or in connection with ads, offers, and other sponsored content that we display across our Products, without any compensation to you. For example, we may show your friends that you are interested in an advertised event or have liked a Page created by a brand that has paid us to display its ads on Facebook. Ads like this can be seen only by people who have your permission to see the actions you've taken on Facebook. You can learn more about your ad settings and preferences.

3. Permission to update software you use or download: If you download or use our software, you give us permission to download and install updates to the software where available.

4. Limits on using our intellectual property

If you use content covered by intellectual property rights that we have and make available in our Products (for example, images, designs, videos, or sounds we provide that you add to content you create or share on Facebook), we retain all rights to that content (but not yours). You can only use our copyrights or trademarks (or any similar marks) as expressly permitted by our Brand Usage Guidelines or with our prior written permission. You must obtain our written permission (or permission under an open source license) to modify, create derivative works of, decompile, or otherwise attempt to extract source code from us.

Return to top

# 4. Additional provisions

1. Updating our Terms

KEKER\3305\FBXARMS\1763278.v1-11/3/21

We work constantly to improve our services and develop new features to make our Products better for you and our community. As a result, we may need to update these Terms from time to time to accurately reflect our services and practices. Unless otherwise required by law, we will notify you before we make changes to these Terms and give you an opportunity to review them before they go into effect. Once any updated Terms are in effect, you will be bound by them if you continue to use our Products.

We hope that you will continue using our Products, but if you do not agree to our updated Terms and no longer want to be a part of the Facebook community, you can delete your account at any time.

2. Account suspension or termination

We want Facebook to be a place where people feel welcome and safe to express themselves and share their thoughts and ideas.

If we determine that you have clearly, seriously or repeatedly breached our Terms or Policies, including in particular our Community Standards, we may suspend or permanently disable access to your account. We may also suspend or disable your account if you repeatedly infringe other people's intellectual property rights or where we are required to do so for legal reasons.

Where we take such action we'll let you know and explain any options you have to request a review, unless doing so may expose us or others to legal liability; harm our community of users; compromise or interfere with the integrity or operation of any of our services, systems or Products; or where we are restricted due to technical limitations; or where we are prohibited from doing so for legal reasons.

You can learn more about what you can do if your account has been disabled and how to contact us if you think we have disabled your account by mistake.

If you delete or we disable your account, these Terms shall terminate as an agreement between you and us, but the following provisions will remain in place: 3, 4.2-4.5.

3. Limits on liability

We work hard to provide the best Products we can and to specify clear guidelines for everyone who uses them. Our Products, however, are provided "as is," and we make no guarantees that they always will be safe, secure, or error-free, or that they will function without disruptions, delays, or imperfections. To the extent permitted by law, we also DISCLAIM ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, AND NON-INFRINGEMENT. We do not control or direct what

KEKER\3305\FBXARMS\1763278.v1-11/3/21

people and others do or say, and we are not responsible for their actions or conduct (whether online or offline) or any content they share (including offensive, inappropriate, obscene, unlawful, and other objectionable content).

We cannot predict when issues might arise with our Products. Accordingly, our liability shall be limited to the fullest extent permitted by applicable law, and under no circumstance will we be liable to you for any lost profits, revenues, information, or data, or consequential, special, indirect, exemplary, punitive, or incidental damages arising out of or related to these Terms or the Facebook Products, even if we have been advised of the possibility of such damages. Our aggregate liability arising out of or relating to these Terms or the Facebook Products will not exceed the greater of $100 or the amount you have paid us in the past twelve months.

4. Disputes

We try to provide clear rules so that we can limit or hopefully avoid disputes between you and us. If a dispute does arise, however, it's useful to know up front where it can be resolved and what laws will apply.

For any claim, cause of action, or dispute you have against us that arises out of or relates to these Terms or the Facebook Products ("claim"), you agree that it will be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County. You also agree to submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim, and that the laws of the State of California will govern these Terms and any claim, without regard to conflict of law provisions.

5. Other

1. These Terms (formerly known as the Statement of Rights and Responsibilities) make up the entire agreement between you and Facebook, Inc. regarding your use of our Products. They supersede any prior agreements.
2. Some of the Products we offer are also governed by supplemental terms. If you use any of those Products, supplemental terms will be made available and will become part of our agreement with you. For instance, if you access or use our Products for commercial or business purposes, such as buying ads, selling products, developing apps, managing a group or Page for your business, or using our measurement services, you must agree to our Commercial Terms. If you post or share content containing music, you must comply with our Music Guidelines. To the extent any supplemental terms conflict with these Terms, the supplemental terms shall govern to the extent of the conflict.

KEKER\3305\FBXARMS\1763278.v1-11/3/21

11/12/2021 10:47 PM Westmoreland County 21CI03063

3. If any portion of these Terms is found to be unenforceable, the remaining portion will remain in full force and effect. If we fail to enforce any of these Terms, it will not be considered a waiver. Any amendment to or waiver of these Terms must be made in writing and signed by us.

4. You will not transfer any of your rights or obligations under these Terms to anyone else without our consent.

5. You may designate a person (called a legacy contact) to manage your account if it is memorialized. Only your legacy contact or a person who you have identified in a valid will or similar document expressing clear consent to disclose your content upon death or incapacity will be able to seek disclosure from your account after it is memorialized.

6. These Terms do not confer any third-party beneficiary rights. All of our rights and obligations under these Terms are freely assignable by us in connection with a merger, acquisition, or sale of assets, or by operation of law or otherwise.

7. You should know that we may need to change the username for your account in certain circumstances (for example, if someone else claims the username and it appears unrelated to the name you use in everyday life).

8. We always appreciate your feedback and other suggestions about our products and services. But you should know that we may use them without any restriction or obligation to compensate you, and we are under no obligation to keep them confidential.

9. We reserve all rights not expressly granted to you.

Return to top

# 5. Other terms and policies that may apply to you

- **Community Standards**: These guidelines outline our standards regarding the content you post to Facebook and your activity on Facebook and other Facebook Products.

- **Commercial Terms**: These terms apply if you also access or use our Products for any commercial or business purpose, including advertising, operating an app on our Platform, using our measurement services, managing a group or a Page for a business, or selling goods or services.

KEKER\3305\FBXARMS\1763278.v1-11/3/21

- **Advertising Policies**: These policies specify what types of ad content are allowed by partners who advertise across the Facebook Products.

- **Self-Serve Ad Terms**: These terms apply when you use self-serve advertising interfaces to create, submit, or deliver advertising or other commercial or sponsored activity or content.

- **Pages, Groups and Events Policy**: These guidelines apply if you create or administer a Facebook Page, group, or event, or if you use Facebook to communicate or administer a promotion.

- **Facebook Platform Policy**: These guidelines outline the policies that apply to your use of our Platform (for example, for developers or operators of a Platform application or website or if you use social plugins).

- **Developer Payment Terms**: These terms apply to developers of applications that use Facebook Payments.

- **Community Payment Terms**: These terms apply to payments made on or through Facebook.

- **Commerce Policies**: These guidelines outline the policies that apply when you offer products and services for sale on Facebook.

- **Facebook Brand Resources**: These guidelines outline the policies that apply to use of Facebook trademarks, logos, and screenshots.

- **Music Guidelines**: These guidelines outline the policies that apply if you post or share content containing music on Facebook.

- **Live Policies**: These policies apply to all content broadcast to Facebook Live.

Date of Last Revision: October 22, 2020

**EXHIBIT 2: INSTAGRAM TERMS OF USE**

# Terms of Use

**Copy Link**

Welcome to Instagram!

These Terms of Use (or "Terms") govern your use of Instagram, except where we expressly state that separate terms (and not these) apply, and provide information about the Instagram Service (the "Service"), outlined below. When you create an Instagram account or use Instagram, you agree to these terms. The Facebook Terms of Service do not apply to this Service.

The Instagram Service is one of the Facebook Products, provided to you by Facebook, Inc. These Terms of Use therefore constitute an agreement between you and Facebook, Inc.

**ARBITRATION NOTICE: YOU AGREE THAT DISPUTES BETWEEN YOU AND US WILL BE RESOLVED BY BINDING, INDIVIDUAL ARBITRATION AND YOU WAIVE YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION LAWSUIT OR CLASS-WIDE ARBITRATION. WE EXPLAIN SOME EXCEPTIONS AND HOW YOU CAN OPT OUT OF ARBITRATION BELOW.**

**The Instagram Service**

We agree to provide you with the Instagram Service. The Service includes all of the Instagram products, features, applications, services, technologies, and software that we provide to advance Instagram's mission: To bring you closer to the people and things you love. The Service is made up of the following aspects:

- **Offering personalized opportunities to create, connect, communicate, discover, and share.** People are different. We want to strengthen your relationships through shared experiences you actually care about. So we build systems that try to understand who and what you and others care about, and use that information to help you create, find, join, and share in experiences that matter to you. Part of that is highlighting content, features, offers, and accounts you might be interested in, and offering ways for you to experience Instagram, based on things you and others do on and off Instagram.

- **Fostering a positive, inclusive, and safe environment.** We develop and use tools and offer resources to our community members that help to make their experiences positive and inclusive, including when we think they might need help. We also have teams and systems that work to combat abuse and violations of our Terms and policies, as well as harmful and deceptive behavior. We use all the information we have-including your information-to try to keep our platform secure. We also may share information about misuse or harmful content with other Facebook Companies or law enforcement. Learn more in the **Data Policy**.

- **Developing and using technologies that help us consistently serve our growing community.** Organizing and analyzing information for our growing community is central to our Service. A big part of our Service is creating and using cutting-edge technologies that help us personalize, protect, and improve our Service on an incredibly large scale for a broad global community. Technologies like artificial intelligence and machine learning give us the power to apply complex processes across our Service. Automated technologies also help us ensure the functionality and integrity of our Service.

- **Providing consistent and seamless experiences across other Facebook Company Products.** Instagram is part of the Facebook Companies, which share technology, systems, insights, and information-including the information we have about you (learn more in the **Data Policy**) in order to provide services that are better, safer, and more secure. We also provide ways to interact across the Facebook Company Products that you use, and designed systems to achieve a seamless and consistent experience across the Facebook Company Products.

- **Ensuring access to our Service.**
  To operate our global Service, we must store and transfer data across our systems around the world, including outside of your country of residence. The use of this global infrastructure is necessary and essential to provide our Service. This infrastructure may be owned or operated by Facebook Inc., Facebook Ireland Limited, or their affiliates.

- **Connecting you with brands, products, and services in ways you care about.**
  We use data from Instagram and other Facebook Company Products, as well as from third-party partners, to show you ads, offers, and other sponsored content that we believe will be meaningful to you. And we try to make that content as relevant as all your other experiences on Instagram.

- **Research and innovation.**
  We use the information we have to study our Service and collaborate with others on research to make our Service better and contribute to the well-being of our community.

**How Our Service Is Funded**

Instead of paying to use Instagram, by using the Service covered by these Terms, you acknowledge that we can show you ads that businesses and organizations pay us to promote on and off the **Facebook Company Products**. We use your personal data, such as information about your activity and interests, to show you ads that are more relevant to you.

We show you relevant and useful ads without telling advertisers who you are. We don't sell your personal data. We allow advertisers to tell us things like their business goal and the kind of audience they want to see their ads. We then show their ad to people who might be interested.

We also provide advertisers with reports about the performance of their ads to help them understand how people are interacting with their content on and off Instagram. For example, we provide general demographic and interest information to advertisers to help them better understand their audience. We don't share information that directly identifies you (information such as your name or email address that by itself can be used to contact you or identifies who you are) unless you give us specific permission. Learn more about how Instagram ads work **here**.

You may see branded content on Instagram posted by account holders who promote products or services based on a commercial relationship with the business partner mentioned in their content. You can learn more about this here.

**The Data Policy**

Providing our Service requires collecting and using your information. The **Data Policy** explains how we collect, use, and share information across the **Facebook Products**. It also explains the many ways you can control your information, including in the **Instagram Privacy and Security Settings**. You must agree to the Data Policy to use Instagram.

**Your Commitments**

In return for our commitment to provide the Service, we require you to make the below commitments to us.

**Who Can Use Instagram.** We want our Service to be as open and inclusive as possible, but we also want it to be safe, secure, and in accordance with the law. So, we need you to commit to a few restrictions in order to be part of the Instagram community.

- You must be at least 13 years old.

- You must not be prohibited from receiving any aspect of our Service under applicable laws or engaging in payments related Services if you are on an applicable denied party listing.

- We must not have previously disabled your account for violation of law or any of our policies.

16

- You must not be a convicted sex offender.

**How You Can't Use Instagram.** Providing a safe and open Service for a broad community requires that we all do our part.

- **You can't impersonate others or provide inaccurate information.**
  You don't have to disclose your identity on Instagram, but you must provide us with accurate and up to date information (including registration information), which may include providing personal data. Also, you may not impersonate someone or something you aren't, and you can't create an account for someone else unless you have their express permission.

- **You can't do anything unlawful, misleading, or fraudulent or for an illegal or unauthorized purpose.**

- **You can't violate (or help or encourage others to violate) these Terms or our policies, including in particular the Instagram Community Guidelines, Facebook Platform Terms and Developer Policies, and Music Guidelines**.
  If you post branded content, you must comply with our Branded Content Policies, which require you to use our branded content tool. Learn how to report conduct or content in our **Help Center**.

- **You can't do anything to interfere with or impair the intended operation of the Service.**
  This includes misusing any reporting, dispute, or appeals channel, such as by making fraudulent or groundless reports or appeals.

- **You can't attempt to create accounts or access or collect information in unauthorized ways.**
  This includes creating accounts or collecting information in an automated way without our express permission.

- **You can't sell, license, or purchase any account or data obtained from us or our Service.**
  This includes attempts to buy, sell, or transfer any aspect of your account (including your username); solicit, collect, or use login credentials or badges of other users; or request or collect Instagram usernames, passwords, or misappropriate access tokens.

- **You can't post someone else's private or confidential information without permission or do anything that violates someone else's rights, including intellectual property rights (e.g., copyright infringement, trademark infringement, counterfeit, or pirated goods).**
  You may use someone else's works under exceptions or limitations to copyright and related rights under applicable law. You represent you own or have obtained all necessary rights to the content you post or share. Learn more, including how to report content that you think infringes your intellectual property rights, **here**.

- **You can't modify, translate, create derivative works of, or reverse engineer our products or their components.**

- **You can't use a domain name or URL in your username without our prior written consent.**

**Permissions You Give to Us.** As part of our agreement, you also give us permissions that we need to provide the Service.

- **We do not claim ownership of your content, but you grant us a license to use it.**
  Nothing is changing about your rights in your content. We do not claim ownership of your content that you post on or through the Service and you are free to share your content with anyone else, wherever you want. However, we need certain legal permissions from you (known as a "license") to provide the Service. When you share, post, or upload content that is covered by intellectual property rights (like photos or videos) on or in connection with our Service, you hereby grant to us a non-exclusive, royalty-free, transferable, sub-licensable, worldwide license to host, use, distribute, modify, run, copy, publicly perform or display, translate, and create derivative works of your content (consistent with your privacy and application settings). This license will end when your content is deleted from our systems. You can delete content individually or all at once by deleting your account. To learn more about how we use

17

information, and how to control or delete your content, review the **Data Policy** and visit the **Instagram Help Center**.

- **Permission to use your username, profile picture, and information about your relationships and actions with accounts, ads, and sponsored content.**
  You give us permission to show your username, profile picture, and information about your actions (such as likes) or relationships (such as follows) next to or in connection with accounts, ads, offers, and other sponsored content that you follow or engage with that are displayed on Facebook Products, without any compensation to you. For example, we may show that you liked a sponsored post created by a brand that has paid us to display its ads on Instagram. As with actions on other content and follows of other accounts, actions on sponsored content and follows of sponsored accounts can be seen only by people who have permission to see that content or follow. We will also respect your ad settings. You can learn more **here** about your ad settings.

- **You agree that we can download and install updates to the Service on your device.**

## Additional Rights We Retain

- If you select a username or similar identifier for your account, we may change it if we believe it is appropriate or necessary (for example, if it infringes someone's intellectual property or impersonates another user).

- If you use content covered by intellectual property rights that we have and make available in our Service (for example, images, designs, videos, or sounds we provide that you add to content you create or share), we retain all rights to our content (but not yours).

- You can only use our intellectual property and trademarks or similar marks as expressly permitted by our **Brand Guidelines** or with our prior written permission.

- You must obtain written permission from us or under an open source license to modify, create derivative works of, decompile, or otherwise attempt to extract source code from us.

## Content Removal and Disabling or Terminating Your Account

- We can remove any content or information you share on the Service if we believe that it violates these Terms of Use, our policies (including our **Instagram Community Guidelines**), or we are permitted or required to do so by law. We can refuse to provide or stop providing all or part of the Service to you (including terminating or disabling your access to the Facebook Products and Facebook Company Products) immediately to protect our community or services, or if you create risk or legal exposure for us, violate these Terms of Use or our policies (including our **Instagram Community Guidelines**), if you repeatedly infringe other people's intellectual property rights, or where we are permitted or required to do so by law. We can also terminate or change the Service, remove or block content or information shared on our Service, or stop providing all or part of the Service if we determine that doing so is reasonably necessary to avoid or mitigate adverse legal or regulatory impacts on us. If you believe your account has been terminated in error, or you want to disable or permanently delete your account, consult our **Help Center**. When you request to delete content or your account, the deletion process will automatically begin no more than 30 days after your request. It may take up to 90 days to delete content after the deletion process begins. While the deletion process for such content is being undertaken, the content is no longer visible to other users, but remains subject to these Terms of Use and our Data Policy. After the content is deleted, it may take us up to another 90 days to remove it from backups and disaster recovery systems.

- Content will not be deleted within 90 days of the account deletion or content deletion process beginning in the following situations:

18

- where your content has been used by others in accordance with this license and they have not deleted it (in which case this license will continue to apply until that content is deleted); or

- where deletion within 90 days is not possible due to technical limitations of our systems, in which case, we will complete the deletion as soon as technically feasible; or

- where deletion would restrict our ability to:

  - investigate or identify illegal activity or violations of our terms and policies (for example, to identify or investigate misuse of our products or systems);

  - protect the safety and security of our products, systems, and users;

  - comply with a legal obligation, such as the preservation of evidence; or

  - comply with a request of a judicial or administrative authority, law enforcement, or a government agency;

- in which case, the content will be retained for no longer than is necessary for the purposes for which it has been retained (the exact duration will vary on a case-by-case basis).

- If you delete or we disable your account, these Terms shall terminate as an agreement between you and us, but this section and the section below called "Our Agreement and What Happens if We Disagree" will still apply even after your account is terminated, disabled, or deleted.

**Our Agreement and What Happens if We Disagree**

**Our Agreement.**

- Your use of music on the Service is also subject to our Music Guidelines, and your use of our API is subject to our Facebook Platform Terms and Developer Policies. If you use certain other features or related services, you will be provided with an opportunity to agree to additional terms that will also become a part of our agreement. For example, if you use payment features, you will be asked to agree to the **Community Payment Terms**. If any of those terms conflict with this agreement, those other terms will govern.

- If any aspect of this agreement is unenforceable, the rest will remain in effect.

- Any amendment or waiver to our agreement must be in writing and signed by us. If we fail to enforce any aspect of this agreement, it will not be a waiver.

- We reserve all rights not expressly granted to you.

**Who Has Rights Under this Agreement.**

- Our past, present, and future affiliates and agents, including Instagram LLC, can invoke our rights under this agreement in the event they become involved in a dispute. Otherwise, this agreement does not give rights to any third parties.

- You cannot transfer your rights or obligations under this agreement without our consent.

- Our rights and obligations can be assigned to others. For example, this could occur if our ownership changes (as in a merger, acquisition, or sale of assets) or by law.

**Who Is Responsible if Something Happens.**

- Our Service is provided "as is," and we can't guarantee it will be safe and secure or will work perfectly all the time. TO THE EXTENT PERMITTED BY LAW, WE ALSO DISCLAIM ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, AND NON-INFRINGEMENT.

- We also don't control what people and others do or say, and we aren't responsible for their (or your) actions or conduct (whether online or offline) or content (including unlawful or objectionable content). We also aren't responsible for services and features offered by other people or companies, even if you access them through our Service.

- Our responsibility for anything that happens on the Service (also called "liability") is limited as much as the law will allow. If there is an issue with our Service, we can't know what all the possible impacts might be. You agree that we won't be responsible ("liable") for any lost profits, revenues, information, or data, or consequential, special, indirect, exemplary, punitive, or incidental damages arising out of or related to these Terms, even if we know they are possible. This includes when we delete your content, information, or account. Our aggregate liability arising out of or relating to these Terms will not exceed the greater of $100 or the amount you have paid us in the past twelve months.

- You agree to defend (at our request), indemnify and hold us harmless from and against any claims, liabilities, damages, losses, and expenses, including without limitation, reasonable attorney's fees and costs, arising out of or in any way connected with these Terms or your use of the Service. You will cooperate as required by us in the defense of any claim. We reserve the right to assume the exclusive defense and control of any matter subject to indemnification by you, and you will not in any event settle any claim without our prior written consent.

**How We Will Handle Disputes.**

- Except as provided below, **you and we agree that any cause of action, legal claim, or dispute between you and us arising out of or related to these Terms or Instagram ("claim(s)") must be resolved by arbitration on an individual basis. Class actions and class arbitrations are not permitted**; you and we may bring a claim only on your own behalf and cannot seek relief that would affect other Instagram users. If there is a final judicial determination that any particular claim (or a request for particular relief) cannot be arbitrated in accordance with this provision's limitations, then only that claim (or only that request for relief) may be brought in court. All other claims (or requests for relief) remain subject to this provision.

- Instead of using arbitration, you or we can bring claims in your local "small claims" court, if the rules of that court will allow it. If you don't bring your claims in small claims court (or if you or we appeal a small claims court judgment to a court of general jurisdiction), then the claims must be resolved by binding, individual arbitration. The American Arbitration Association will administer all arbitrations under its Consumer Arbitration Rules. **You and we expressly waive a trial by jury.**

  The following claims don't have to be arbitrated and may be brought in court: disputes related to intellectual property (like copyrights and trademarks), violations of our Platform Policy, or efforts to interfere with the Service or engage with the Service in unauthorized ways (for example, automated ways). In addition, issues relating to the scope and enforceability of the arbitration provision are for a court to decide.

  This arbitration provision is governed by the Federal Arbitration Act.

  You can opt out of this provision within 30 days of the date that you agreed to these Terms. To opt out, you must send your name, residence address, username, email address or phone number you use for your Instagram account, and a clear statement that you want to opt out of this arbitration agreement,

21CI03063    11/12/2021 10:47 PM Westmoreland County

and you must send them here: Facebook, Inc. ATTN: Instagram Arbitration Opt-out, 1601 Willow Rd., Menlo Park, CA 94025.

- Before you commence arbitration of a claim, you must provide us with a written Notice of Dispute that includes your name, residence address, username, email address or phone number you use for your Instagram account, a detailed description of the dispute, and the relief you seek. Any Notice of Dispute you send to us should be mailed to Facebook, Inc., ATTN: Instagram Arbitration Filing, 1601 Willow Rd. Menlo Park, CA 94025. Before we commence arbitration, we will send you a Notice of Dispute to the email address you use with your Instagram account, or other appropriate means. If we are unable to resolve a dispute within thirty (30) days after the Notice of Dispute is received, you or we may commence arbitration.

- We will pay all arbitration filing fees, administration and hearing costs, and arbitrator fees for any arbitration we bring or if your claims seek less than $75,000 and you timely provided us with a Notice of Dispute. For all other claims, the costs and fees of arbitration shall be allocated in accordance with the arbitration provider's rules, including rules regarding frivolous or improper claims.

- For any claim that is not arbitrated or resolved in small claims court, you agree that it will be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County. You also agree to submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim.

- The laws of the State of California, to the extent not preempted by or inconsistent with federal law, will govern these Terms and any claim, without regard to conflict of law provisions.

**Unsolicited Material.**

We always appreciate feedback or other suggestions, but may use them without any restrictions or obligation to compensate you for them, and are under no obligation to keep them confidential.


**Updating These Terms**

We may change our Service and policies, and we may need to make changes to these Terms so that they accurately reflect our Service and policies. Unless otherwise required by law, we will notify you (for example, through our Service) before we make changes to these Terms and give you an opportunity to review them before they go into effect. Then, if you continue to use the Service, you will be bound by the updated Terms. If you do not want to agree to these or any updated Terms, you can delete your account, **here**.


Revised: December 20, 2020

KEKER\3305\FBXARMS\1763278.v1-11/3/21

## IN THE COURT OF COMMON PLEAS OF
## WESTMORELAND COUNTY, PENNSYLVANIA

ARMSLIST LLC; TORQUELIST, LLC;
JONATHAN GIBBON; and N. ANDREW
VARNEY, III,

          Plaintiffs,

      v.

FACEBOOK, INC.; and INSTAGRAM, INC.,

          Defendants.

CIVIL DIVISION

Case No. 21CI03063
JUDGE HATHAWAY

**DEFENDANTS' BRIEF IN SUPPORT OF
PRELIMINARY OBJECTIONS**

Filed on Behalf of Defendants FACEBOOK,
INC. and INSTAGRAM, INC.

Counsel of Record for these Parties:

Jack B. Cobetto
(jcobetto@eckertseamans.com)
Pa ID No. 53444

Audrey K. Kwak
(akwak.@eckertseamans.com)
Pa ID No. 200527

Carolyn O. Boucek
(cboucek@eckertseamans.com)
Pa. ID No. 324410

ECKERT SEAMANS
CHERIN & MELLOTT, LLC
U.S. Steel Tower
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
(412) 566-6000

**Certificate of Compliance**

I certify that this filing complies with the
provisions of the *Case Records Public Access
Policy of the Unified Judicial System of
Pennsylvania* that require filing confidential
information and documents differently than non-
confidential information and documents.

Submitted by: Counsel for Defendants
Name: Audrey K. Kwak
Pa. ID No.: 200527

*/s/ Audrey K. Kwak*

# TABLE OF CONTENTS

DEFENDANTS' BRIEF IN SUPPORT OF PRELIMINARY OBJECTIONS ............................ 1

I.     STATEMENT OF THE CASE ........................................................................................ 1

II.    STATEMENT OF THE ISSUES INVOLVED .......................................................... 2

III.   ARGUMENT ............................................................................................................... 3

      A.     Plaintiffs' Claims Against Facebook Violate the Forum-Selection Clause
           in Facebook's Terms of Service, and Should be Dismissed. .................................. 3

      B.     Plaintiffs' Claims Against Instagram Violate the Forum-Selection Clause
           in the Instagram Service's Terms of Use, and Should be Dismissed. ................... 7

      C.     Plaintiffs' Claims Against both Facebook and Instagram are Barred by
           Section 230 and Should be Dismissed ................................................................... 9

      D.     Plaintiffs' Claims under Article 1, § 7 of the Pennsylvania Constitution
           Fail as Facebook and Instagram Do Not Constitute Public Forums Subject
           to the Pennsylvania Constitution's Free Speech Guarantee. ............................... 12

IV.   CONCLUSION ......................................................................................................... 14

11/12/2021 10:47 PM Westmoreland County  21CI03063

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) ...............................................................................10

*Green v. Am. Online*,
318 F.3d 465 (3d Cir. 2003)....................................................................................10

*Jane Doe No. 1 v. Backpage.com, LLC*,
817 F.3d 12 (1st Cir. 2016)....................................................................................10

*Levitt v. Yelp! Inc.*,
2011 WL 5079526 (N.D. Cal. Oct. 26, 2011)..........................................................9

*Loveland v. Facebook*,
2021 WL 1734800 (E.D. Pa. May 3, 2021) .............................................................6

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
591 F.3d 250 (4th Cir. 2009) ..................................................................................9

*O'Kroley v. Fastcase, Inc.*,
831 F.3d 352 (6th Cir. 2016) ................................................................................10

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
144 F. Supp. 3d 1088 (N.D. Cal. 2015), *affirmed sub nom, Sikhs for Justice,*
*Inc. v. Facebook, Inc.*, 697 F. App'x 526 (9th Cir. 2017) .......................................10

**State Cases**

*Cent. Contracting Co. v. C. E. Youngdahl & Co.*,
418 Pa. 122 (1965).......................................................................................3, 4, 5, 8

*Credit Am., Inc. v. Intercept Corp.*,
2001 WL 1807381 (Pa. C.P. Oct. 2, 2001), *aff'd sub nom. Credit Am. v.*
*Intercept Corp.*, 809 A.2d 968 (Pa. Super. Ct. 2002) .........................................4, 5

*Foster v. Peat Marwick Main & Co.*,
587 A.2d 382 (Pa. Commw. Ct. 1991), *aff'd sub nom. Foster v. Mut. Fire,*
*Marine & Inland Ins. Co.*, 676 A.2d 652 (Pa. 1996) ..............................................9

*Keystone Advertising Specialties, LLC v. Antera Software USA, Inc.*,
2020 WL 3410872 (Pa. C.P. May 8, 2020) .............................................................6

*Morgan Trailer Mfg. Co. v. Hydraroll, Ltd.*,
759 A.2d 926 (Pa. Super. Ct. 2000).........................................................................4

11/12/2021 10:47 PM Westmoreland County    21CI03063

*Nelson Med. Grp. v. Phoenix Health Corp.*,
    2002 WL 1066959 (Pa. C.P. May 28, 2002) ...........................................................................5

*O'Hara v. First Liberty Ins. Corp.*,
    984 A.2d 938 (Pa. Super. Ct. 2009)...............................................................................3, 8

*Supplementmarket.com, Inc. v. Google, Inc.*,
    No. 09-43056, 2010 WL 6309991 (Pa. Com. Pl. July 26, 2010)...........................................10

**Federal Statutes**

47 U.S.C. § 230.............................................................................................2, 9, 10, 11, 12

**Rules**

Pa. R.C.P. No. 1028(c)(2) ...............................................................................................4

Pennsylvania Rule of Civil Procedure 1028(a)(1) .............................................................2, 3, 8, 14

Pennsylvania Rule of Civil Procedure 1028(a)(4) ...............................................................2, 9, 14

**Constitutional Provisions**

California Constitution Article 1 § 2 .......................................................................................7

Pennsylvania Constitution Article 1, § 7 ...........................................................................1, 2, 7

**IN THE COURT OF COMMON PLEAS OF**
**WESTMORELAND COUNTY, PENNSYLVANIA**

| | |
|---|---|
| ARMSLIST LLC, et al., | Case No. 21CI03063 |
| Plaintiff, | JUDGE HATHAWAY |
| v. | |
| FACEBOOK, INC., et al. | |
| Defendant. | |

**DEFENDANTS' BRIEF IN SUPPORT OF PRELIMINARY OBJECTIONS**

Defendants Facebook, Inc. ("Facebook") and Instagram, Inc. ("Instagram") respectfully submit this Brief in Support of Preliminary Objections.[1]

### I.        Statement of the Case

Plaintiffs Armslist LLC, Torquelist LLC, Jonathan Gibbon, and N. Andrew Varney, III have filed an Amended and Supplemental Complaint (collectively, "Complaint") in which they allege that Facebook and Instagram violated their rights to free speech under the Pennsylvania Constitution by locking, banning, or suspending their accounts in response to "political and social criticism" related to Armslist's status as a "visible political target" for "opponents of the right to bear arms." Plaintiffs seek injunctive relief against Facebook and Instagram.

More specifically, Plaintiffs Jonathan Gibbon, the Chief Executive Officer and sole member of Armslist and Torquelist, and N. Andrew Varney III, a contractor for Armslist, allege on their individual behalfs and on behalf of Armslist and Torquelist that they have had their personal and business Facebook and Instagram accounts "locked," "banned" or disabled, preventing them from exercising their rights to free speech under the Pennsylvania Constitution. *See* Compl. at ¶ 142. Plaintiffs allege that Facebook and Instagram have held themselves out as

---

[1] On October 28, 2021, Facebook, Inc. changed its name to Meta Platforms, Inc. Because the Complaint was filed prior to the name change and for ease of reference, this motion refers to Defendant identified as "Facebook, Inc." in the pleadings as "Facebook" here.

1

open public forums and then censored plaintiffs for discussing firearms on the platform as a result of political pressure from government actors, the media and advocacy groups. *See id.* at ¶¶142–43, 147–48, 156, 163.

Plaintiffs' allegations fall into three categories: First, Plaintiffs Armslist, Torquelist, Mr. Gibbon and Mr. Varney allege that they were banned from posting on Facebook and had their accounts locked and deleted by Facebook in violation of the Pennsylvania Constitution and as a response to political pressure from government actors, media, and advocacy groups. *See id.* at ¶¶ 146–47, 149–50. Second, Plaintiffs Armslist, Mr. Gibbon and Mr. Varney allege that each had their Instagram accounts locked and deleted by Instagram in violation of the Pennsylvania Constitution. *See id.*at ¶ 160. Third, Plaintiff Torquelist alleges that Instagram limited visibility of its account, limiting the business's ability to comment on any topic on the Instagram platform in violation of the Pennsylvania Constitution. *See id.* at ¶ 166.

Plaintiffs seek permanent injunctions enjoining Facebook and Instagram from locking or banning Plaintiffs' accounts and restoring them to the state they were in before the alleged locking or banning.

## II.    Statement of the Issues Involved

Plaintiffs' Complaint should be dismissed for three reasons. First, Plaintiffs' claims against both Facebook and Instagram violate forum-selection clauses they agreed to in Facebook's Terms of Service and Instagram's Terms of Use and therefore, this Court is an improper forum under Pennsylvania Rule of Civil Procedure 1028(a)(1). These enforceable forum-selection clauses require Plaintiffs to litigate their claims in the state or federal court in California, specifically the U.S. District Court for the Northern District of California or a state court located in San Mateo, California. Second, even if this Court were the appropriate forum for these claims, each of Plaintiffs' claims are barred by the Communications Decency Act, 47 U.S.C. § 230 ("Section 230"), and therefore should be dismissed with prejudice in accordance with Pennsylvania Rule of Civil Procedure 1028(a)(4). Third, the Plaintiffs' claims are legally insufficient under Pennsylvania Rule of Civil Procedure 1028(a)(4) because Facebook and Instagram are not public

forums subject to the Pennsylvania Constitution Art. 1 §7 free speech guarantee and therefore should be dismissed with prejudice.

### III.     Argument

Pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(1), Plaintiffs' claims against both Facebook and Instagram should be dismissed because Plaintiffs are contractually bound by the forum-selection clauses in Facebook's and Instagram's respective Terms of Service and Use, which require Plaintiffs to litigate their claims in state or federal court in California, specifically the U.S. District Court for the Northern District of California or a state court located in San Mateo, California.

### A.     Plaintiffs' Claims Against Facebook Violate the Forum-Selection Clause in Facebook's Terms of Service, and Should be Dismissed.

Plaintiffs' Complaint refers at great length to the Facebook Terms of Service, yet Plaintiffs violated those very terms by filing this complaint in Pennsylvania, rather than following the contract's valid forum-selection clause. This Court should dismiss the Plaintiffs' claims against Facebook with prejudice, after which Plaintiffs may, if they choose, refile in state court in San Mateo County, California or United States District Court for the Northern District of California consistent with Facebook's Terms of Service.

Pennsylvania courts routinely enforce forum-selection clauses where "those clauses are clear and unambiguous." *O'Hara v. First Liberty Ins. Corp.,* 984 A.2d 938, 941–42 (Pa. Super. Ct. 2009) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991)). The Supreme Court of Pennsylvania has specified that "a court in which venue is proper and which has jurisdiction should decline to proceed with the cause when the parties have freely agreed that litigation shall be conducted in another forum and where such agreement is not unreasonable at the time of litigation." *Cent. Contracting Co. v. C. E. Youngdahl & Co*., 418 Pa. 122, 133 (1965).

The Court further specified that "mere inconvenience or additional expense" are not enough to create unreasonableness "since it may be assumed that the plaintiff received under the contract consideration for these things[,]" and "[i]f the agreed upon forum is available to plaintiff

and said forum can do substantial justice to the cause of action then plaintiff should be bound by his agreement." *Id.* at 133–34. Unreasonableness is a high standard: for example, a forum selection clause was found to be unreasonable when it would have forced litigation to take place in Germany even though all of the key witnesses and documentary evidence were in the United States. *Morgan Trailer Mfg. Co. v. Hydraroll, Ltd.*, 759 A.2d 926, 930–31 (Pa. Super. Ct. 2000); *see also Credit Am., Inc. v. Intercept Corp.,* No. 3923, Control 061887, 2001 WL 1807381, at *2 (Pa. C.P. Oct. 2, 2001), *aff'd sub nom. Credit Am. v. Intercept Corp.,* 809 A.2d 968 (Pa. Super. Ct. 2002) (where plaintiffs' objection to a forum-selection clause fails because "they fail[ed] to set forth any factors other than the location of witnesses to establish how pursuit of litigation in North Dakota would seriously impair their ability to pursue their claims").

As Plaintiffs acknowledge in their Complaint, Facebook requires users to agree to Terms of Service to access and use the platform. *See* Compl. ¶¶ 36–40.  As a condition of signing up for Facebook services, Plaintiffs—like anyone who creates a Facebook account and uses Facebook's products—agreed to the Terms of Service.  Declaration of Jenny Pricer in Support of Defs.' Brief in Support of Prelim. Objs. ("Pricer Decl."), Ex. 1.[2]  Facebook's Terms of Service include the following language about resolving disputes:

> **4. Disputes**
>
> We try to provide clear rules so that we can limit or hopefully avoid disputes between you and us. If a dispute does arise, however, it's useful to know up front where it can be resolved and what laws will apply.
>
> For any claim, cause of action, or dispute you have against us that arises out of or relates to these Terms or the Facebook Products ("claim"), you agree that it will be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County. You also agree to submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim, and that the laws of the State of California

---

[2] The Pricer Declaration (Exhibit A); the Facebook Terms of Service (Exhibit 1); and the Instagram Terms of Use (Exhibit 2) are submitted as support for these preliminary objections in accordance with Pa. R.C.P. No. 1028(c)(2).

will govern these Terms and any claim, without regard to conflict of
law provisions.

*Id.* Ex. 1 at 4.4.

Facebook's Terms of Service clearly provide that for "any claim, cause of action, or dispute
you have against us that arises out of or relates to these Terms or the Facebook Products[,]" users
"agree that it will be resolved exclusively in the U.S. District Court for the Northern District of
California or a state court located in San Mateo County." *Id.* The four Plaintiffs allege claims
regarding their separate Facebook profiles—each plaintiff's individual personal account and the
Armslist and Torquelist business pages. Each of them accepted Facebook's Terms of Service
including its forum-selection clause as a condition of signing up for Facebook accounts and
services. Pricer Decl. ¶ 5.

The forum-selection clause is clear and unambiguous, stating in plain language that claims
will be resolved exclusively within either the U.S. District Court for the Northern District of
California or a state court located in San Mateo County. Plaintiffs cannot claim ignorance as to the
Terms of Service as they explicitly referenced them throughout their complaint. *See* Compl. ¶¶ 36–
40. But even if the Plaintiffs had not seen the forum-selection clause when agreeing to the Terms
of Service, the clause would remain enforceable as "Pennsylvania law affords no leniency for
individuals who do not read the contracts that they execute." *Nelson Med. Grp. v. Phoenix Health
Corp.*, Nos. 3078 Dec. Term 2001, 2002 WL 1066959, at *2 (Pa. C.P. May 28, 2002).

Absent a showing of "circumstances existing at the time of litigation" that would "seriously
impair plaintiff's ability to pursue his cause of action[,]" Pennsylvania courts enforce forum-
selection clauses like the one at issue. *Credit Am., Inc.*, 2001 WL 1807381, at *1 (citing *Central
Contracting Co.*, 418 Pa. at 133. Pennsylvania courts give deference to agreements made where
"both parties to this action are business entities with extensive prior business-contracting
experience[,]" especially if the evidence does not reveal that one party "lacked any meaningful
choice but to accept [the] Defendant's proposed terms[.]" *Keystone Advert. Specialties, LLC v.
Antera Software USA, Inc.*, No. 20-0127, 2020 WL 3410872, at *3 (Pa. C.P. May 8, 2020).

Pennsylvania federal courts grant motions to dismiss based on these forum-selection clauses as a matter of course. *See Loveland v. Facebook*, 20-cv-6260, 2021 WL 1734800 at *5 (E.D. Pa. May 3, 2021) ("On the issue of validity and enforceability, several district courts have previously addressed this issue and unequivocally reached the conclusion that Facebook's forum selection clause is valid and enforceable. Any potential argument that the forum selection clause should be set aside based on Plaintiffs' purported failure to read or understand the ramifications of its terms would be unpersuasive. Forum selection clauses appearing in internet agreements are enforceable.").

Here, there are no exceptional factors that would make it unreasonable for Plaintiffs to try their case in the forum they agreed to at the outset of their use of Facebook.  Both Armslist and Torquelist are online businesses with national reach and contracting experience, and the Plaintiffs note in the Complaint that they seek to participate in the "national debate" on policy that takes place on Facebook's platform, suggesting that they have taken advantage of Facebook's national reach—and making it unlikely that Plaintiffs could not have foreseen litigation outside of Pennsylvania. *See* Compl. ¶ 153. Facebook's main offices are in San Mateo County[3], and most of the discovery related to this case would take place within San Mateo County. Each of these factors is compatible with litigating this case in San Mateo County as both parties agreed to contractually.

Plaintiffs may argue that because their claims are grounded in Pennsylvania's Constitution, they would be unable to pursue substantial justice in a California court. This argument fails for two reasons. First, in accepting Facebook's Terms of Service, Plaintiffs agreed "that the laws of the State of California will govern these Terms and any claim, without regard to conflict of law provisions," which invalidates Plaintiffs' claims here which refer exclusively to the Pennsylvania

---

[3] While Plaintiffs note that Facebook has an office in Pennsylvania, it is only a satellite office dedicated to Facebook's Reality Labs team, not the main place of business. *See* Facebook Careers, "Pittsburgh, PA," https://www.facebook.com/careers/v2/locations/pittsburgh/?p[offices][0]=Pittsburgh%2C%20P A&offices[0]=Pittsburgh%2C%20PA, last accessed Nov. 4, 2021. And there are no allegations in the case relating to Facebook's Reality Labs products.

Constitution. Pricer Decl., Ex. 1 at 4.4 Second, to the extent that Plaintiffs rely upon Pennsylvania Constitution Art. 1, §7 guaranteeing "[t]he free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty[,]" Pa. Const. Art. 1 § 7, the California Constitution guarantees the same substantive right in Art. 1 § 2: "[e]very person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." Cal. Const. Art. 1 § 2. While Facebook maintains that neither of these Amendments provides a cause of action for Plaintiffs' claims, each state promises the same liberties. Plaintiffs could sue in California, in the forum agreed upon by the parties, under this near-identical provision.

Because Plaintiffs have agreed to litigate any claims against Facebook in San Mateo County state court (or the U.S. District Court for the Northern District of California, should jurisdiction exist) under Facebook's Terms of Service and because Plaintiffs' claims could be fairly adjudicated in that forum, Plaintiffs' claims against Facebook should be dismissed.

**B.      Plaintiffs' Claims Against Instagram Violate the Forum-Selection Clause in the Instagram Service's Terms of Use, and Should be Dismissed.**

The Terms of Use for the Instagram service require that Instagram users agree that "for any claim that is not arbitrated or resolved in small claims court, you agree that it will be resolved exclusively in the U.S. District Court for the Northern District of California, or a state court located in San Mateo County." Pricer Decl. Ex. 2. A plaintiff with a claim arising from or out of the Terms of Use for the Instagram service can either bring a claim in their local small claims court, initiate individual, binding arbitration with Instagram, or file a complaint in state court in San Mateo County, California or in the U.S. District Court for the Northern District of California. Pricer Decl., Ex. 2. By using the Instagram service, Plaintiffs agreed to resolve any claims against Facebook Inc. regarding the Instagram service in one of the above-mentioned forums. Pricer Decl. ¶ 6. Plaintiffs' claim should be dismissed for improper forum under Pennsylvania Rule of Civil Procedure 1028(a)(1).

11/12/2021 10:47 PM Westmoreland County    21CI03063

As discussed above, Pennsylvania courts honor forum-selection clauses when said clauses are "clear and unambiguous." *O'Hara,* 984 A.2d at 941–42. Plaintiffs contracted with Instagram and "have freely agreed that litigation shall be conducted in another forum[.]" *Cent. Contracting Co.,* 418 Pa. at 133.

Before using the Instagram service, Plaintiffs had to agree to the Terms of Use for the Instagram service. Every Instagram user is required to agree to the Terms of Use in order to receive access to the service and make an account on the platform. Pricer Decl. ¶¶ 8–9. As Plaintiffs make clear by citing extensively to said Terms of Use, the Terms are always available and accessible to users on the internet. *See* Compl. ¶¶ 86–90.

The Terms of Use are not ambiguous about how disputes about the Instagram service must proceed. First, "claims" are described very broadly. In a section entitled "How We Will Handle Disputes," the Terms of Use define "claims" as "any cause of action, legal claim, or dispute between you and us arising out of or related to these Terms or Instagram ('claim(s)'")." The Terms of Use then state how disputes will be litigated:

- For any claim that is not arbitrated or resolved in small claims court, you agree that it will be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County. You also agree to submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim.

- The laws of the State of California, to the extent not preempted by or inconsistent with federal law, will govern these Terms and any claim, without regard to conflict of law provisions.

Pricer Decl., Ex. 2.

These terms make explicit that both Facebook, Inc. and Instagram users are agreeing to litigate claims in the U.S. District Court for the Northern District of California or a state court located in San Mateo County, California when litigating claims regarding the Instagram service. Because the parties willingly and freely agreed to these terms in exchange for access to Instagram's

service, the Court should dismiss Plaintiffs' claims for refiling in an appropriate venue as provided by Instagram's Terms of Use.

### C. Plaintiffs' Claims Against both Facebook and Instagram are Barred by Section 230 and Should be Dismissed

For the reasons set forth above, the Court should enforce the forum-selection clauses in the Facebook service's Terms of Service and the Instagram service's Terms of Use and dismiss the Complaint. If, however, the Complaint is not dismissed pursuant to those forum-selection clauses, Plaintiffs' claims should be dismissed under Pennsylvania Rule of Civil Procedure 1028(a)(4) as a legally insufficient pleading. *Foster v. Peat Marwick Main & Co.*, 587 A.2d 382, 384 (Pa. Commw. Ct. 1991), *aff'd sub nom. Foster v. Mut. Fire, Marine & Inland Ins. Co.*, 676 A.2d 652 (Pa. 1996) ("the law says with certainty that no recovery is possible" and the "complaint is clearly insufficient to establish any right to relief."). Here, Plaintiffs' claims are barred by Section 230 of the Communications Decency Act ("Section 230"). 47 U.S.C. § 230.

Section 230 provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Section 230 also explicitly states that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3). It is widely accepted that Section 230(c)(1) immunity, "like other forms of immunity, is generally accorded effect at the first logical point in the litigation process[,]" because "immunity is an ***immunity from suit*** rather than a mere defense to liability[.]" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009) (quoting *Brown v. Gilmore*, 278 F.3d 362, 366 n.2 (4th Cir. 2002)) (internal quotation marks omitted) (emphasis in original)*; accord Levitt v. Yelp! Inc.*, Nos. C-10-1321 EMC, C-10-2351 EMC, 2011 WL 5079526, at *8–9 (N.D. Cal. Oct. 26, 2011). While Pennsylvania state courts have addressed

Section 230 in limited contexts[4], the Third Circuit has noted that the Section "'precludes courts from entertaining claims that would place a computer service provider in a publisher's role,' and therefore bars 'lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter content.'" *Green v. Am. Online* (AOL), 318 F.3d 465, 471 (3d Cir. 2003) (citing *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir.1997)).

Plaintiffs' claims against Facebook and Instagram are barred under Section 230(c)(1) if three requirements are met: (1) the sites are "provider[s] . . . of an interactive computer service[;]" (2) the allegedly offending content was "provided by another information content provider[;]" and (3) Plaintiffs' claims treat Facebook and Instagram as the "publisher[s]" of that content. 47 U.S.C. § 230(c)(1); *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 18 (1st Cir. 2016), *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1103 (9th Cir. 2009), *O'Kroley v. Fastcase, Inc.*, 831 F.3d 352, 355 (6th Cir. 2016), *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1093 (N.D. Cal. 2015), *affirmed sub nom, Sikhs for Justice, Inc. v. Facebook, Inc.*, 697 F. App'x 526 (9th Cir. 2017); *Ebeid*, 2019 WL 2059662, at *3.

First, interactive computer service providers include "any information service, system or access software provider that provides or enables computer access by multiple users to a computer server[.]" 47 U.S.C. § 230(f)(2). Facebook and Instagram are unquestionably "interactive computer service" providers under the Act. As Plaintiffs state in the Complaint, Facebook is "a social media platform that allows users to share comments, photos, videos, weblinks and other information with other Facebook users who have chosen to receive such posts ("Friends")." *Compl.* at ¶ 34. Instagram is described in the Complaint as "a social media platform that allows users to share comments, photos, videos, weblinks and other information with other Instagram

---

[4] *See, e.g. Supplementmarket.com, Inc. v. Google, Inc.*, No. 09-43056, 2010 WL 6309991 (Pa. Com. Pl. July 26, 2010) (Plaintiff could not sue Google for alleged defamatory statements on another website linked to by Google's search engine as Google was immune from suit under Section 230).

users who have chosen to receive such posts ("Followers")." *Id.* at ¶ 84. Courts uniformly hold that Facebook and Instagram meet this first criterion. *See, e.g., Force v. Facebook*, Inc., 934 F.3d 53, 64 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 2761, 206 L. Ed. 2d 936 (2020), *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014), *La'Tiejira v. Facebook, Inc*., 272 F.Supp.3d 981, 992 (S.D. Tex. 2017). Each of these services fall squarely within the definition of an interactive computer service immune from suit under Section 230.

Secondly, the offending content was provided by another content provider: here, the content was created by Plaintiffs themselves. Section 230 broadly defines "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development" of the content at issue. 47 U.S.C. § 230(f)(3). [Here, Plaintiffs are the creators of the content at issue: they allege that the Facebook and Instagram services have removed or limited the visibility of their own posts and accounts.] Facebook and Instagram's users, including Mr. Gibbons, Mr. Varney, and their respective businesses,[5] fit this definition, as numerous courts have held. *See, e.g.*, *Ebeid*, 2019 WL 2059662, at *4 ("Plaintiff argues that the information at issue was not provided by another information content provider because plaintiff himself—not some other third-party—provided the information. That argument has been repeatedly rejected."); *Lancaster*, 2016 WL 3648608, at *3 (holding that plaintiff's own content satisfied second prong of the CDA immunity test).

Thirdly, the Complaint seeks to "hold [the] service provider[s] liable for [their] exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter content." *Zeran v. America Online*, *Inc*., 129 F.3d 327, 330 (4th Cir.1997). Here, Plaintiffs bring suit based on Facebook and Instagram's alleged removal or demotion of their accounts on the social media platforms. This alleged removal is precisely the sort of "withdrawal"

---

[5] Plaintiffs have availed themselves of Section 230's civil immunity provisions when sued for their own regulation of content on the Armslist platform (or lack thereof). Plaintiffs reference this within their Complaint. *See e.g.*, Compl. at ¶ 61.

of content that Congress has explicitly protected from suit. *See, e.g., Id.*; *Fair Hous. Council of San Fernando Vall. v. Roommates.Com, LLC,* 521 F.3d 1157, 1170–71 (9th Cir. 2008) ("the editor's job was, essentially, to determine whether or not to prevent its posting—precisely the kind of activity for which section 230 was meant to provide immunity. And any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230."). Because Plaintiffs' claims against Facebook and Instagram fall squarely within the immunity provision of Section 230, the Complaint fails to state a claim upon which relief can be granted and should be dismissed.

### D. Plaintiffs' Claims under Article 1, § 7 of the Pennsylvania Constitution Fail as Facebook and Instagram Do Not Constitute Public Forums Subject to the Pennsylvania Constitution's Free Speech Guarantee.

Though Plaintiffs' claims against Facebook, Inc. regarding the Facebook and Instagram services under the Pennsylvania Constitution are barred by the Plaintiffs' agreement to be governed by California law, Plaintiffs' claims would fail regardless because the Facebook and Instagram services are not "public forums."

In their Complaint, Plaintiffs assert that Facebook and Instagram are "public forums" that can be regulated under the Pennsylvania Constitution's free speech guarantee. Compl. at ¶ 130–38, 142. Plaintiffs' wrongly analogize Facebook and Instagram to the private college at issue in *Commonwealth v. Tate*, 49 Pa. 158 (1981). *See* Compl. at ¶ 130. But unlike the private college in *Tate*, Facebook and Instagram do not provide an open forum for any member of the public to participate. Rather, the Facebook and Instagram services provide a limited forum for users of the Facebook and Instagram platforms to communicate with people who also use the Facebook and Instagram platforms. As a result, the Facebook and Instagram services are analogous to the email services provided by AOL in *Cyber Promotions, Inc. v. Am. Online, Inc.*, 948 F. Supp. 436, 446 (E.D. Pa. 1996).

In *Cyber Promotions*, the U.S. District Court for the Eastern District of Pennsylvania applied the U.S. Constitution, the Pennsylvania Constitution, and the Virginia Constitution to the

plaintiff company's claims that AOL had improperly barred the company from sending out mass

solicitation emails to AOL's users in violation of the free speech guarantees in each Constitution.

*Id.* The court rejected the plaintiffs effort there to cite rely on *Tate* as justification for the

proposition that private companies (not just state actors) could violate the free speech clause in the

Pennsylvania constitution, noting that

> mail servers are certainly not a traditional public forum such as a
> street, park or even the college in Tate. Instead, AOL's e-mail
> servers are privately owned and are only available to the subscribers
> of AOL who pay a fee for their usage. Moreover, unlike Tate, AOL
> has not presented its e-mail servers to the public at large for
> disseminating political messages at a certain event. Indeed, AOL has
> never presented its e-mail servers to the public at large for
> dissemination of messages in general as AOL's servers have a finite
> capacity. . . As noted above, AOL's e-mail system simply provides
> a means for its members to communicate with those members of the
> public who are connected with the Internet.

*Id.* at 446. Like AOL's email servers, Facebook and Instagram's platforms are not available to the

public at large. Both the Facebook and Instagram services limit access to content posted on their

platform based on whether or not the member of the public attempting to view the content is a

Facebook or Instagram user who has agreed to Facebook and Instagram's terms.

Because the Facebook and Instagram services are not a public forum, Plaintiffs' claims that

Facebook and the Instagram service have violated their right to free speech under the Pennsylvania

Constitution fail and should be dismissed.[6]

---

[6] Not only do Plaintiffs' claims fail because Facebook and Instagram are not public forums subject
to the Pennsylvania Constitution's free speech guarantee, the relief that Plaintiffs seek—to force
Facebook and Instagram to host Plaintiffs' content—would violate Facebook and Instagram's First
Amendment rights guaranteed by the United States Constitution. The First Amendment safeguards
the "exercise of editorial control or judgment." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp.
of Boston*, 515 U.S. 557, 575 (1995). The First Amendment protects "the decision of both what to
say and what not to say." *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc*., 487 U.S. 781, 797
(1988); *see also Blatty v. New York Times Co*., 42 Cal. 3d 1033 (1986) (sustaining demurrer
because defendant had First Amendment right to not publish certain content). And courts across
the country have consistently held that these First Amendment protections extend to internet
platforms. *See, e.g., NetChoice, LLC v. Moody*, Case No. 4:21-cv-220-RH-MAF, 2021 WL
2690876, at *11 (N.D. Fla. June 30, 2021); *La'Tiejira v. Facebook, Inc.*, 272 F.Supp.3d 981, 994
(S.D. Tex. 2017); *Zhang v. Baidu.com, Inc.,* 10 F.Supp.3d 433 (S.D.N.Y. 2014); *Hassell v. Bird*,
5 Cal. 5th 522, 536 (2018); *see generally Reno v. Am. Civil Liberties Union*, 521 U.S. 844 (1997)

## IV.    Conclusion

The Court should dismiss this case for improper forum under Pa. R.C.P. 1028(a)(1) in accordance with the parties' agreement to litigate cases against Facebook and Instagram in San Mateo County, California state court or the U.S. District Court for the Northern District of California. If this Court concludes that either the forum selection clause in Facebook's Terms of Service or within Instagram's Terms of Use do not apply, it should dismiss the case with prejudice under Rule 1028(a)(4) for legal insufficiency of a pleading.

Dated: November 12, 2021                           Respectfully submitted,

*/s/ Audrey K. Kwak*
Jack B. Cobetto
Pa ID No. 53444
Audrey K. Kwak
Pa ID No. 200527
Carolyn O. Boucek
Pa. ID No. 324410

ECKERT SEAMANS CHERIN & MELLOTT, LLC
U.S. Steel Tower
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
Telephone: (412) 566-6000
Email:  jcobetto@eckertseamans.com

*Counsel for Defendants Facebook, Inc. and Instagram, Inc.*

---

(First Amendment protections extend to the internet).

**IN THE COURT OF COMMON PLEAS OF**
**WESTMORELAND COUNTY, PENNSYLVANIA**

| | |
|---|---|
| ARMSLIST LLC; TORQUELIST, LLC; JONATHAN GIBBON; and N. ANDREW VARNEY, III | Case No. 21CI03063 |
| Plaintiffs, | JUDGE HATHAWAY |
| v. | |
| FACEBOOK, INC. and INSTAGRAM, INC.. | |
| Defendants. | |

## <u>ORDER</u>

On this 12th day of November, 2021, after consideration of the foregoing Defendant's Preliminary Objections to Plaintiff's Complaint, the briefs filed by the parties both in support of and in opposition to, and after oral argument on said preliminary objections, it is hereby ORDERED ADJUDGED AND DECREED that the Defendant's Preliminary Objections to Plaintiff's Complaint are SUSTAINED, and Plaintiff's Complaint is hereby dismissed with prejudice.

By the Court:

_____

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: Facebook, Inc. et al.

Signature: */s/ Audrey K. Kwak*

Printed Name: Audrey K. Kwak

Attorney No.: 200527

11/12/2021 10:47 PM Westmoreland County 21CI03063

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of November, 2021, I caused to be served a true and correct copy of the foregoing (1) Defendant's Preliminary Objections to Plaintiffs' Complaint; (2) the Defendant's Brief in support thereof; and (3) a proposed order by mailing same via electronic mail upon the following counsel of record:

**Richard T. Coyne**
**WEGMAN HESSLER**
6055 Rockside Woods Blvd., Ste. 200
Cleveland, Ohio 44131
(216) 642-3342
rtcoyne@wegmanlaw.com


*/s/ Audrey K. Kwak*
Jack B. Cobetto
Pa ID No. 53444
Audrey K. Kwak
Pa ID No. 200527

ECKERT SEAMANS CHERIN &
MELLOTT, LLC
U.S. Steel Tower
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
Telephone: (412) 566-6000
Email: jcobetto@eckertseamans.com

*Counsel for Defendants Facebook, Inc. and Instagram, Inc.*