IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARMSLIST LLC, TORQUELIST LLC, JONATHAN GIBBON, and N. ANDREW VARNEY, III, | : | Case No: 2:21-cv-01917-WSH |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| FACEBOOK, INC. and INSTAGRAM, LLC, | : | |
| | : | |
| Defendants. | : | |

**PLAINTFFS' MOTION FOR REMAND**

AND NOW, come Plaintiffs Armslist LLC, Torquelist LLC, Jonathan Gibbon, and N. Andrew Varney, III (collectively, "Plaintiffs"), by and through their counsel Wegman Hessler and pursuant to 28 USC § 1447, submit this Motion for Remand ("Motion") this matter to the Westmoreland County Court of Common Pleas and for an award of fees and costs, averring as follows:

1.  Defendants Facebook, Inc., and Instagram, LLC (collectively, "Defendants")[1] filed their untimely Notice of Removal on December 30, 2021, over four months after the original complaint in this matter was filed in the Westmoreland County Court of Common Pleas.

2.  Undersigned counsel certifies they have discussed the Motion with defense counsel. Plaintiffs' counsel spoke with defense counsel regarding the Motion on January 28, 2022, and transmitted correspondence dated January 26, 2022, asking Defendants to stipulate to remand for the reasons set forth in the Motion and supporting Brief. A true and correct copy of the January

---

[1] Plaintiffs understand Defendant Facebook changed its name to "Meta Platforms, Inc." For ease of reference, Plaintiffs will continue to refer to Meta Platforms by its name when the original complaint was filed.

26, 2022, letter is attached hereto as Exhibit 1; defense counsel's January 27, 2022, emailed response is attached hereto as Exhibit 2.  Plaintiffs understand Defendants intend to file a response in opposition to the Motion.

### I.  Defendants' Removal Was Untimely.

3.  Plaintiffs filed their original complaint in the Westmoreland County Court of Common Pleas on August 11, 2021. The original complaint alleged claims for equitable relief under Pennsylvania's Constitution and included a demand for fees and costs, including attorneys' fees. Dkt. 1-1 [Compl.], ¶¶ 132-162.

4.  On September 1, 2021, Plaintiffs filed their amended and supplemental complaint ("FAC") serving Instagram on September 15, 2021, and Facebook on September 29, 2021; the FAC alleged substantively identical equitable claims and relief as the original pleading. *See* Dkt. 1-2 [FAC], ¶¶ 139-169.

5.  In state court, the defendants filed preliminary objections to the FAC on November 12, 2021.

6.  Then, on December 2, 2021, Plaintiffs filed their second amended complaint ("SAC"), which was served on December 2, 2021. The SAC again included equitable claims substantively identical to the claims alleged in the original pleading and FAC and added claims for damages. *See* Dkt. 1-5 [SAC], ¶¶ 179-209. Importantly, **all** claims were subject to the stipulation that the amount in controversy does not exceed $74,999.99.

7.  In the Notice of Removal, Defendants argue that Plaintiffs' stipulation was limited to damages and not equitable claims. Dkt. 1 [Notice], ¶ 31.

8. Defendants argue the value of Plaintiffs' equitable claims pushes the total amount in controversy beyond the jurisdictional threshold and the stipulated amount in controversy.

9. However, Defendants' characterization of Plaintiffs' claims and Plaintiffs' stipulation is facially inaccurate, as the stipulation included in the SAC applies to all claims, not just claims for damages. Dkt. 1-5 [SAC], p. 64-67.

10. Unlike prior versions of the complaint, the SAC expressly *limits* the amount in controversy, and thus the amount Plaintiffs can recover, to below $75,000.00.

11. The removal statute required Defendants to file their notice of removal within 30 days of "receipt…through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based…" 28 USC § 1446(b)(1).

12. Defendants' obligation to consider removal began no later than September 29, 2021 after Facebook received the FAC; for whatever reason, Defendants declined to timely remove after receiving the FAC, choosing instead to file preliminary objections in state court. Only after Plaintiffs' subsequent amendment, served on December 2, 2021, and which expressly limited the amount in controversy below the diversity amount in controversy threshold, did Defendants remove.

II. **Defendants Failed To Meet Their Burden Of Proving By Either A Preponderance Of The Evidence Or A Legal Certainty That The Amount In Controversy Exceeds $75,000.**

13. Plaintiffs do not dispute that the parties are diverse as required by 28 USC § 1332(a)(1) for the court to diversity jurisdiction.

14. Plaintiffs dispute the amount in controversy exceeds the $75,000 threshold required by 28 USC § 1332(a).

15. As the party asserting federal subject matter jurisdiction, Defendants have the burden of proving Plaintiffs' claims exceed the jurisdictional amount required for the Court to exercise diversity jurisdiction. *See, e.g., Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007).

16. When a defendant removes an action under 28 USC § 1332(a) as Defendants have done, "the sum demanded in good faith in the initial pleading shall be deemed the amount in controversy" unless certain exceptions apply. *Scaife v. CSX Transportation, Inc.*, 2019 WL 3353727, *3-4 (W.D. Pa. July 25, 2019); 28 USC § 1446(c)(2).

17. The Notice of Removal may only assert the amount in controversy if the pleading seeks "nonmonetary relief…or a monetary judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded." *Id.* (citing 28 USC § 1446(c)(2)(A)).

18. "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court…[;] if the plaintiff contests the defendant's allegation…" the Court must find "by a preponderance of the evidence[] that the amount in controversy exceeds the jurisdictional amount" to exercise subject matter jurisdiction. *See id.* (internal quotations and citations omitted).

19. Here, Plaintiffs' SAC states plainly that the amount in controversy is less than $75,000, and the Court should accept Plaintiffs' allegations as definitive for purposes of determining the amount in controversy and remand to state court without further inquiry.

20. In the alternative, and because Defendants attempt to raise factual issues regarding the amount in controversy, *see* Dkt. 1, ¶¶ 20-30, Defendants must demonstrate to the Court by a preponderance of the evidence the amount in controversy exceeds $75,000. *See* 28 USC § 1446(c)(2).

21. Defendants cannot do that because they failed to attach any evidence at all supporting the Notice of Removal. *See generally* Dkt. 1.

22. Nor does Defendants' speculation about the value of the relief sought by Plaintiffs satisfy their burden under section 1446(c)(2). *See Scaife,* 2019 WL 3353727 at *6 ("If this Court has to 'guess as to whether the jurisdictional threshold has been met, then defendant has not proved its point.'") (citing *Vizant Techs., LLC v. Ocean State Jobbers, Inc.*, 2015 WL 500480, *3 (E.D. Pa. Feb. 5, 2015)).

23. Defendants instead cite *Rabel v. Huntington National Bank*, 2015 WL 3540660 (S.D. W.Va. June 4, 2015), to argue the Court should ignore Plaintiffs' amount-in-controversy stipulation because *Rabel* involved a similar (but materially different) stipulation and the plaintiff there sought equitable and legal remedies. *Id.* at *5-6; see also Dkt. 1, ¶¶ 31-36.

24. Unlike here, the stipulation in *Rabel* omitted equitable claims stating, "...the Plaintiff shall neither seek nor accept an amount greater than $75,000.00 in this case." *Rabel*, Case No. 2:14-cv-25818, Dkt. 1-1, United States District Court for the Southern District of West Virginia (emph. added).

25. Here, Plaintiffs encompass all claims, whether for injunctive relief or damages, in their stipulation limiting the amount in controversy to $74,999.99.

26. The equitable relief in *Rabel* also differs from the injunctive relief sought by Plaintiffs because it was debt cancellation under West Virginia law. If granted, the equitable relief would have taken the amount in controversy beyond the diversity threshold because the amount of the debt to be canceled (a liquidated amount) plus the plaintiff's alleged damages exceeded $75,000. 2015 WL 3540660, *5-6 (S.D. W.Va. June 4, 2015).

5

27. Nor have Defendants offered evidence to rebut the stipulation in the SAC limiting the amount in controversy to $74,999.99, even if *Rabel* governed.

28. In the alternative, Defendants must demonstrate to the Court to a legal certainty the amount in controversy exceeds $75,000. When a defendant removes an action under 28 USC § 1332(a) as Defendants have done, "the sum demanded in good faith in the initial pleading shall be deemed the amount in controversy" unless certain exceptions apply. *Scaife v. CSX Transportation, Inc.*, 2019 WL 3353727, *3-4 (W.D. Pa. July 25, 2019); 28 USC § 1446(c)(2). Where, as here, "the complaint specifically limits the amount in controversy to less than the jurisdictional minimum…, the proponent seeking removal has a higher burden, and must prove to a legal certainty that the amount in controversy exceeds the statutory threshold (i.e., the removing party must show it is legally certain the amount in dispute exceeds $75,000)." *Dunfee v. Allstate Ins. Co.*, 2008 WL 2579799 at *5; *see also Brewer v. Geico*, 2014 WL 241756, *3 (W.D. Pa. Jan. 22, 2014).

29. As such, Defendants failed to carry their burden as the party seeking federal jurisdiction. *See, e.g., Hertz Corp v. Friend*, 559 U.S. 77, 96-97 (2010) ("The burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it").

### III. The Court Should Abstain From Exercising Diversity Jurisdiction.

30. This Court should also remand on the basis of the abstention doctrine set forth in *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 79 S. Ct. 1070, 3 L.Ed. 1058 (1959).

31. Under *Thibodaux*, district courts may abstain in a "diversity case where state law is unclear and an important state interest is at stake." *Grode v. Mut. Fire, Marine & Inland Ins. Co.*, 8 F.3d 953, 957 (3d Cir.1993).

32. This case depends primarily on important issues of Pennsylvania state law—namely the interpretation of Pennsylvania's state constitution's free speech provisions.

33. Because the free speech and expression protections in Pennsylvania's state constitution are broader than the First Amendment's, Pennsylvania's Supreme Court has held that Pennsylvania's state constitution provides broader protection of speech that the First Amendment. *See W. Pennsylvania Socialist Workers 1982 Campaign v. Connecticut Gen. Life Ins. Co.*, 512 Pa. 23, 28, 515 A.2d 1331, 1333–34 (1986).

34. Thus, the Pennsylvania Supreme Court has held that its free speech guarantees can be enforced against private actors. *Commonwealth v. Tate*, 495 Pa. 158, 432 A.2d 1382 (1981).

35. At the same time, the Pennsylvania Supreme Court has recognized that while the Pennsylvania Constitution does afford broader speech protections, those free speech rights can be balanced against the rights of private actors to exclude certain speakers. *See W. Pennsylvania Socialist Workers*, 512 Pa. at 33-34.

36. While the Plaintiffs here contend that the forums created by the Defendants are more akin to the campus in Tate than the shopping mall in Western Pennsylvania Socialist Workers, the Pennsylvania Supreme Court has not ruled definitively on how the Pennsylvania Constitution's guarantees should be applied to social media.

37. As social media has become "the new public square," the scope of what conduct is allowed and the extent to which the Pennsylvania Constitution protects such conduct, without doubt, represent important state interests for the State and the people of Pennsylvania.

38. The discussion of what can and cannot be said online obviously impacts federal constitutional rights and policies as well.

39. Abstention principles teach that where federal courts can avoid the unnecessary adjudication of substantial federal questions avoids "needless friction with state policies" and shows "scrupulous regard for the rightful independence of the state governments[.]" *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 500-501, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

40. Abstention here would thus serve the salutary purpose of allowing the Pennsylvania state court system—rather than the federal courts---to decide how to apply Pennsylvania's state constitution.

## IV.   The Court Should Award Plaintiffs' Attorneys' Fees And Costs Associated With Filing Their Motion.

41. Considering the defects in Defendants' Notice of Removal, the Court should award all available fees and costs if it grants Plaintiffs' Motion.

42. A court may award fees and costs, including attorney's fees, where the removing party lacked any "objectively reasonable basis for removal" for removal. *See, e.g., South Annville Township v. Kovarik*, 651 Fed.Appx. 127, 130-131 (3d Cir. 2016); 28 USC § 1447(c).

43. Defendants had no reasonable basis for removal for at least the following reasons: (a) they waited roughly 60 days after the removal deadline, if not longer; (b) they filed their Notice of Removal without supporting evidence and despite purporting to raise factual issues regarding the amount in controversy; (c) and rely on mischaracterized caselaw from another Circuit to overcome the SAC's damages limitation.

**WHEREFORE**, for the foregoing reasons, the Plaintiffs pray that the Honorable Court grant this Motion, grant an award of fees and costs to Plaintiffs, and remand this matter to the Westmoreland County Court of Common Pleas.

Respectfully submitted,

*/s/ Charles Andrew Hayes*
Charles Andrew Hayes
Admitted pro hac vice
PA ID No. 330964
Wegman Hessler
6055 Rockside Woods Blvd., Ste 200
Cleveland, OH 44131
Tel: (216) 642-3342
cahayes@wegmanlaw.com

*Counsel for Plaintiffs Armslist LLC,
Torquelist LLC, Jonathan Gibbon,
and N. Andrew Varney, III*