IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARMSLIST LLC, TORQUELIST LLC, JONATHAN GIBBON, and N. ANDREW VARNEY, III,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC., and INSTAGRAM, LLC,<br><br>Defendants. | Civil Action No. 2:21-cv-1917-WSH<br><br>*Electronically filed* |

**DEFENDANTS' BRIEF IN OPPOSITION TO MOTION FOR REMAND**

Defendants Facebook, Inc.[1] ("Facebook") and Instagram, LLC ("Instagram") (collectively "Defendants"), by and through their undersigned counsel, respectfully submit this Brief in Opposition to the Motion for Remand filed by Plaintiffs Armslist LLC, Torquelist LLC, Jonathan Gibbon, and N. Andrew Varney, III ("Plaintiffs").

**I.     INTRODUCTION**

Plaintiffs are businesses (and their principals) that operate online gun marketplaces for profit. These online gun marketplaces derive revenue from users who pay to advertise on the gun marketplaces. The heart of Plaintiffs' claims is their desire to use Facebook and Instagram to drive more paying consumers to their online gun marketplaces. In an attempt to keep this dispute out of federal court, Plaintiffs try to diminish the true value of using Facebook and Instagram as a marketing tool by setting an imaginary cap on the amount in controversy. This imaginary cap defies the logic behind the amount in controversy requirement.

---

[1] On October 28, 2021, Facebook, Inc. changed its name to Meta Platforms, Inc. Because Plaintiffs' Complaint was filed prior to the name change and for ease of reference, this Opposition refers to Defendant identified as "Facebook, Inc." in the pleadings as "Facebook, Inc." here.

1

Plaintiffs' additional grounds for remand also fail. Defendants timely removed this case within 30 days of receiving the SAC, the first pleading from which Defendants could ascertain that the amount in controversy exceeded $75,000. Additionally, neither the *Thibodaux* nor the *Pullman* abstention doctrines are applicable to this case. Because Defendants had reasonable grounds for removing this action, this Court should deny Plaintiffs' request for attorneys' fees and costs for removing this action. Accordingly, this Court should deny all of Plaintiffs' requests set forth in their Motion for Remand.

## II.     RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

### A.     Plaintiffs Amended Their Original Equity Action to Add Breach of Contract Claims and Monetary Damages.

On or about August 11, 2021, Plaintiffs filed a "Complaint for Declaratory and Injunctive Relief" in the Court of Common Pleas of Westmoreland County, Pennsylvania. Dkt. No. 1-1. The Complaint sought declaratory and injunctive relief only. *Id.* at ¶ 1 & pp. 34–40.

On September 1, 2021, Plaintiffs filed a Petition to File an amended complaint ("Amended Complaint"). Like the original Complaint, the Amended Complaint sought declaratory judgment and injunctive relief only. Dkt. No. 1-2, ¶ 7 & pp. 37–43. Plaintiffs served the Complaint and Amended Complaint on both defendants on or about September 29, 2021. Dkt. No. 1-3.

Defendants filed preliminary objections to the Amended Complaint on November 12, 2021. Dkt. No. 1-4, pp. 35. The grounds for the preliminary objections were improper venue[2] and legal insufficiency of a pleading. *Id.*, pp. 3–5. In response to Defendants' preliminary objections, Plaintiffs filed and served a Second Amended and Supplemental Complaint on December 2, 2021 ("SAC"). Dkt. 1-5. The SAC added a count for breach of contract (Count Two), and in the

---

[2] Plaintiffs entered into unambiguous agreements with Defendants to litigate claims against either of them in the U.S. District Court for the N.D. of California or state court in San Mateo County, California.

alternative, unjust enrichment (Count Three) and promissory estoppel (Count Four) (collectively, the "Breach of Contract Claims.") . *Id.,* pp. 45, 49, 52, 53.  Further, Plaintiffs' SAC added a request for damages "not to exceed $74,999.99," for Counts Two through Four.  *Id.,* ¶¶ 254, 274, 294. Plaintiffs continued to separately seek declaratory and injunctive relief. *Id.*, p. 45 (Count I).

On December 30, 2021, Defendants filed their Notice of Removal, timely removing this case to federal court based upon 28 U.S.C. § 1332(a) and in accordance with 28 U.S.C. § 1446(b)(3). Dkt. No. 1.  Plaintiffs concede that diversity is satisfied but move to remand on the basis that the amount in controversy does not exceed $75,000. Dkt. 12, ¶ 13.

### B. Plaintiffs Used Facebook and Instagram to Drive Users to and Generate Income for Armslist.com and Torquelist.com.[3]

Armslist LLC created Armslist.com, an online platform akin to classified ads which allows third parties to communicate regarding buying, selling, and trading firearms and related accessories.[4] Dkt. 1-5, ¶¶ 23, 25.  Armslist LLC alleges that it conducts its gun marketplace online only. *Id.*, ¶ 24.  Armslist LLC also alleges that it makes money by selling: (1) advertisements on its website; and (2) premium memberships, which are required to post classified advertisements. *Id.*, ¶ 33.  A personal account costs $3.99/mo. and a premium vendor account costs $30/mo. or $300 for a year.[5]

According to the SAC, Armslist, Mr. Gibbon and Mr. Varney began using Facebook in 2007, and Instagram in 2012-2013, to communicate with potential users of Armslist.com.  Dkt. 1-5, ¶¶ 57, 108. Plaintiffs allege that they used the sites for direct advertising to potential users of

---

[3] By setting forth the allegations of Plaintiffs' complaints, including the SAC, Defendants are in no way admitting Plaintiffs' allegations.
[4] Similarly, Torquelist LLC created Torquelist.com, but is an online classifieds site for buying, selling, and trading cars, trucks and automotive parts and accessories. Dkt. No. 1-5, ¶ 65.
[5] See Armslist.com FAQs page or Appendix A to this Opposition.

Armslist.com and for customer engagement to create affinity between Armslist and its users.[6] *Id.*, ¶¶ 58, 67, 108, 109, 119. Internet users searching for Armslist and Torquelist could have found Armslist's Facebook and Instagram page. *See Id.* ¶¶ 40, 65.

Plaintiffs allege that in mid-January 2020, Instagram and Facebook, respectively, removed Armslist and Torquelist's business pages, pursuant to their terms and conditions, thereby preventing their respective employees, contractors, and users from accessing their Facebook and Instagram pages.[7] *Id.*, ¶¶ 70, 96, 122, 127. Plaintiffs further allege that users could no longer send Armslist private messages. *Id.*, ¶ 71. Additionally, Torquelist alleges that Instagram changed its algorithms to decrease Torquelist's visitor and follower traffic starting in January 2020. *Id.*, ¶ 71.

## IV. LEGAL ARGUMENT

### A. Defendants Timely Removed This Action.

Defendants timely removed this action by filing their notice of removal within 30 days of receiving the SAC. *See* 28 U.S.C. § 1446(b)(3). The SAC is the first instance that it became unequivocally clear and certain that the amount in controversy exceeded the statutory requirement for diversity jurisdiction. *See Boggs v. Harris*, 226 F. Supp. 3d 475, 488 (W.D. Pa. 2016) (holding that 30-day removal period is triggered only after it is "unequivocally clear and certain that federal jurisdiction lies"). Prior to the SAC, Defendants could only postulate as to whether the value of the injunctive relief alone exceeded $75,000. While the injunctive relief has some value, nothing in the Plaintiffs' prior complaints made it unequivocally clear and certain that the value exceeded $75,000.00. By adding a claim for monetary damages equaling $74,999.99 to the request for

---

[6] Torquelist and Mr. Gibbon, who owns Torquelist, started using Facebook and Instagram "around 2013" to communicate with potential users of Torquelist.com. Dkt. No. 1-5, ¶¶ 67, 118.

[7] Plaintiffs also allege that Facebook banned Mr. Gibbon (January 16, 2020) and Mr. Verney (September 2020) SAC para 69, 72, and Instagram banned Mr. Gibbon (Jan. 16, 2020) and Mr. Verney (September 2020). *Id.*, ¶¶ 69, 72, 120, 121.

4

injunctive relief, the SAC made it unequivocally clear and certain that the amount in controversy exceeds $75,000.00.  Accordingly, Defendants timely removed this action by filing a notice of removal within 30 days of receiving the SAC.

      **B.**    **The Total Amount in Controversy Exceeds $75,000.**

This Court has jurisdiction over this action because there is complete diversity among the parties and the amount in controversy exceeds the statutory requirement.  A reasonable assessment of the value of the rights being litigated establishes that the amount in controversy exceeds $75,000.00.  *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347, 97 S. Ct. 2434, 2443 (1977); *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993).  When a plaintiff seeks injunctive relief, "the amount in controversy is measured by the value of the right sought to be protected by the equitable relief." *In re Corestates Tr. Fee Litig.*, 39 F.3d 61, 65 (3d Cir.1994).

Here, Count One of the SAC seeks declaratory and injunctive relief.  The rights Plaintiffs seek to protect through its request for equitable relief is their access to Facebook and Instagram to drive customers and potential customers to their websites.  The evidence shows that these rights, from Plaintiffs' perspective, has a value of more than two cents

Armslist derives value from access to Facebook and Instagram based on its ability to attract customers, who purchase memberships from Armslist.  Armslist charges between $3.99 to $6.99 per month for personal use memberships and $30 per month for business/commercial use memberships.  *See* Appendix A.  Accordingly, the value of attracting just one personal use customer through Facebook or Instagram exceeds two cents.

      **C.**    **Plaintiffs' Stipulation Is Not Dispositive of the Amount in Controversy.**

The courts of the Third Circuit have not issued an opinion involving a pre-removal stipulation attempting to cap the amount in controversy below the jurisdictional threshold.  However, existing law in this Circuit dictates that such a stipulation is not dispositive on the

determination of the amount in controversy.[8]  To the contrary, the determination of the amount in controversy does not rest on the amount the plaintiff attaches to its claims.  *Angus v. Shiley, Inc.*, 989 F.2d 142, 145 (3d Cir 1993) (holding that the court's task is "to examine not just the dollar figure offered by the plaintiff but also her actual legal claims").  Rather, it is determined from a reasonable assessment of the legal claims filed in the state court at the time of removal.  *Samuel-Bassett v. KIA Motors Am., Inc.,* 357 F.3d 392, 398 (3d Cir. 2004).

More importantly, Plaintiffs did not limit the relief they sought to monetary damages.  Plaintiffs request more than eleven forms of permanent injunction and "any other relief the Court deems just and equitable."  Dkt. No. 1-5, pp. 55-64.  The actual value of the injunctive relief controls the amount in controversy determination, not the value Plaintiffs attempt to place on such relief.  *See Manhattan Telecoms. Corp. v. Granite Telecom. LLC.*, 500 F. Supp. 3d 255, 262 (D. Del. 2020) (finding the amount in controversy exceeded $75,000 despite plaintiff's limitation of monetary damages to below $75,000 where the injunctive relief plaintiff also sought had a million-dollar value).  To permit Plaintiffs to unilaterally, and without basis, devalue the injunctive relief would render the amount in controversy requirement completely useless.  Instead, the value of injunctive relief is measured by the actual value of the rights at issue.  *See Hunt*, 432 U.S. at 347.  Accordingly, the combined value of Plaintiffs' actual legal claims which include equitable relief *and* money damages clearly shows that the amount in controversy exceeds the dollar figure Plaintiffs attach to their claims.

---

[8] Additionally, review of Plaintiffs' stipulation, which purports to set the amount in controversy at no more than $74,999.99, fails to specify if this amount encompasses the declaratory relief sought, and fails to state that Plaintiffs agree not to seek nor accept more than $74,999.99 should more be awarded at trial.  *See also* Defendants' Notice of Removal, Dkt. No. 1, pp. 7-8, which is incorporated by reference (explaining Plaintiffs' stipulation is not dispositive and does not effectively limit the amount in controversy to less than $75,000).

### D. This Court Should Not Abstain from Exercising Its Jurisdiction Over this Action Under the *Thibodaux* or *Pullman* Abstention Doctrines.

Plaintiffs' assertion that this Court should abstain from exercising its jurisdiction in accordance with the abstention doctrines set forth in *La. Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 79 S. Ct. 1030 (1959) and *R.R. Comm'n of Tex. v. Pullman Co.,* 312 U.S. 496, 61 S. Ct. 643 (1941) has no merit. Plaintiffs bear a "heavy burden of persuasion that abstention is appropriate." *See Bell Atl.-Pa., Inc. v. Pa. Pub. Util. Comm'n*, 107 F. Supp. 2d 653, 664 (E.D. Pa. 2000) (Katz, J.), *aff'd on other grounds*, 273 F.3d 337 (3d Cir. 2001). Plaintiffs do not satisfy this heavy burden.

The *Thibodaux* doctrine, a variant of the *Burford* abstention doctrine, is concerned with protecting complex state administrative processes from undue federal interferences. . . ." *Grode v. Mut. Fire, Marine & Inland Ins. Co.*, 8 F.3d 953, 957-59 (3rd Cir. 1993). The *Pullman* doctrine applies where a plaintiff asks a federal court to decide a federal question that need not be decided because it can be decided based on state law and involves a state law regulatory scheme. *Chiropractic America v. Lavecchia*, 180 F.3d 99, 103 (3d Cir. 1999) (explaining Pullman abstention may be applied to avoid deciding a federal constitutional question when the case may be disposed on questions of state law). Abstention under these grounds is not appropriate here.

Plaintiffs argue for abstention on the grounds that a federal court should not decide state constitutional issues and should not decide issues undecided by the Pennsylvania Supreme Court. These arguments are meritless. Contrary to Plaintiffs' assertions, federal courts decide state constitutional issues, including the application of Pennsylvania's constitutional right to free speech. For instance, in *Fenico v. City of Phila.*, the district court was presented with the issues of whether a public employees' social media use and the City's discipline therefore, violated the First and Fourteenth Amendment, and the Pennsylvania Constitution. *Fenico v. City of Phila.*, Civ.

7

Action No. 20-3336, 2022 WL 226069, *1 (E.D. Pa. Jan. 26, 2022) (deciding the case on a motion to dismiss); s*ee also*, *Pomicter v. Luzerne Cnty. Convention Ctr. Auth.*, 322 F. Supp. 3d 558 (M.D. Pa. 2018) *aff'd in part, rev'd in part*, 939 F.3d 534 (3d Cir. 2019) (deciding county convention center violated First Amendment, Fourteenth Amendment and Pennsylvania Constitution's right to free speech); *Bishop v. City of Phila.*, Civ. Action No. 20-3977, 2021 WL 4477097 (E.D. Pa. Sept. 30, 2021) (deciding City employee's claims for violation of right to free speech made on Facebook under federal Constitution and Pennsylvania Constitution).

Additionally, federal courts sitting in diversity decide novel issues of state law. When the state's highest court has not addressed an issue of law, a federal court must predict how the state's highest court would resolve the issue. *Paolella v. Browning-Ferris, Inc.*, 158 F.3d 183, 189 (3d Cir. 1998); *Rolick v. Collins Pine Co.*, 925 F.2d 661, 664 (3d Cir. 1991). Federal courts do not simply abstain to avoid the issue. Rather, federal courts rely upon the state court's intermediate appellate state court rulings unless the federal court is convinced by other persuasive data the highest court of the state would decide otherwise. *Rolick*, 925 F.2d at 664.

Accordingly, Plaintiffs have not established that abstention is appropriate, and this Court should not abstain from exercising its jurisdiction over this matter.

### D. Plaintiffs' Request for Attorneys' Fees Is Without Merit

As set forth above, the amount in controversy in this action is in excess of $75,000. Even if the Court were to disagree, Plaintiffs have not demonstrated a basis for an award of fees and costs under 28 U.S.C. § 1447(c). In *Martin v. Franklin Cap. Corp.*, the U.S. Supreme Court announced the proper standard for awarding fees under § 1447(c): "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132,

141, 126 S. Ct. 704, 163 L.Ed.2d 547 (2005).

Here, Defendants have shown that they have more than an objectively reasonable basis for seeking removal. The parties are diverse and based on the total value of the relief sought the amount in controversy exceeds $75,000. Moreover, Plaintiffs' attempts to cap the amount in controversy via stipulation are not dispositive given the value of the relief sought in Count One. Further and contrary to Plaintiffs' inaccurate assertions, Defendants timely removed, Defendants were not required to file evidence with their Notice of Removal according to *Dart*, 574 U.S. at 89, 135 S. Ct. at 554, and Defendants did not mischaracterize case law from another Circuit. In short, this is certainly not an instance where Defendants failed to raise federal jurisdiction, and the grounds for removal lacked a reasonable basis. Accordingly, Plaintiffs' request for costs and attorneys' fees should be denied.

### IV. CONCLUSION

For the forgoing reasons, Plaintiffs' Motion for Remand, and all relief requested therein, should be denied.

Respectfully submitted,

ECKERT SEAMANS CHERIN &MELLOTT, LLC
/s/ *Carolyn O. Boucek*
Jack B. Cobetto Pa ID No. 53444
Audrey K. Kwak Pa ID No. 200527
Carolyn O. Boucek Pa. ID No. 324410
U.S. Steel Tower
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
Telephone: (412) 566-6000
jcobetto@eckertseamans.com
akwak@eckertseamans.com
cboucek@eckertseamans.com

ORRICK HERRINGTON & SUTCLIFFE LLP
Kelly A. Williams Pa.
ID. No. 74872
2121 Main Street
Wheeling, WV 26003-2809
304-238-2902
kelly.williams@orrick.com

*Counsel for Defendants Facebook, Inc. and Instagram, Inc.*

Dated: February 22, 2022

CC:   VIA ECF
All counsel of record