IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARMSLIST LLC, TORQUELIST LLC, JONATHAN GIBBON, and N. ANDREW VARNEY, III, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 21-1917 |
| FACEBOOK, INC. and INSTAGRAM, LLC, | ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Presently before the Court is Plaintiffs' Motion for Remand. (Docket No. 11). The motion has been fully briefed and is ready for disposition. (Docket Nos. 12, 16, 17). For the reasons set forth herein, Plaintiffs' Motion for Remand shall be granted in part and denied in part.

**I.    Background**

Plaintiffs Armslist LLC, ("Armslist"), Torquelist LLC ("Torquelist"), Jonathan Gibbon ("Gibbon"), and N. Andrew Varney, III ("Varney") initially filed a "Complaint for Declaratory and Injunctive Relief" in the Court of Common Pleas of Westmoreland County, Pennsylvania, alleging that Defendants Facebook, Inc. ("Facebook")[1] and Instagram, LLC ("Instagram") suppressed, suspended, and/or deleted their accounts on these social media platforms based upon political or ideological disapproval in violation of the Pennsylvania Constitution. (Docket No. 1-1). This initial complaint did not contain a demand for monetary damages. (*Id.*).

On September 1, 2021, Plaintiffs filed a "Petition to File Amended and Supplemental Complaint" and an "Amended and Supplemental Complaint in Civil Action for Declaratory and

---

[1]    Facebook changed its name to Meta Platforms, Inc. on October 28, 2021. (Docket No. 16 at 1 n.1). The parties continue to use the name Facebook for ease of reference and the Court will do the same.

Injunctive Relief." (Docket No. 1-2). Like the original complaint, this first amended complaint ("FAC") was filed in the Court of Common Pleas and solely sought declaratory and injunctive relief for alleged violations of the Pennsylvania Constitution. Defendants filed preliminary objections to the FAC on November 12, 2021. (Docket No. 1-4).

On December 2, 2021, and in response to Defendants' preliminary objections, Plaintiffs filed and served a "Second Amended and Supplemental Complaint in Civil Action for Damages Under Pa Common Law, Declaratory, and Injunctive Relief" ("SAC"). (Docket No. 1-5). In addition to re-alleging the original constitutional claims seeking declaratory and injunctive relief (Count One), the SAC added claims for breach of contract (Count Two), unjust enrichment (Count Three), and promissory estoppel (Count Four) seeking injunctive relief, monetary damages in an amount not greater than $74,999.99, and attorneys' fees and costs. (*Id*.). Accompanying the SAC are Plaintiffs' Stipulations that "the amount of controversy in this case . . . is no greater than $74,999.99, plus interest and costs." (*Id.* at 65-68).

As set forth in the SAC, Armslist operates an online platform that allows third parties to communicate regarding buying, selling, and trading firearms and related accessories, though Armslist does not buy, sell, or trade firearms itself nor does it receive any proceeds from any sales conducted on its platform. (Docket No. 1-5, ¶¶ 23-25). Rather, Armslist makes money by selling advertisements on its website and by selling premium membership designations that permit such users to post classified advertisements. (*Id.* ¶ 33). Torquelist operates an online platform that allows third parties to communicate regarding buying, selling, and trading cars, trucks, and automotive parts and accessories. (*Id*. ¶ 65). Gibbon is the Chief Executive Officer and sole owner of both Armslist and Torquelist. (*Id*. ¶¶ 3, 66).

According to the SAC, Armslist, Gibbon, and Varney used Facebook and Instagram to communicate with friends, family, and potential users of Armslist. (Docket No. 1-5, ¶¶ 57, 108). Their Facebook and Instagram postings were "expressly political" and made general statements reflecting conservative and libertarian attitudes towards firearms supportive of Second Amendment rights and criticisms of certain proposed gun control measures and the political figures supporting those measures. (*Id.* ¶¶ 60-62, 108-15). While Plaintiffs expressly aver that they never used Facebook or Instagram as a medium for the sale or exchange of firearms, they do allege that Armslist's, Gibbon's, and Varney's communications on those platforms "sometimes took the form of direct advertising, but was more often geared towards customer engagement" and to "build affinity and name recognition with potential Armslist users." (*Id.* ¶¶ 58-59, 110-15). Similarly, Plaintiffs aver that Torquelist used Facebook and Instagram to communicate with potential users of its service and typically posted comments, links, and photos relating to automotive performance, including car and truck reviews, industry news, and other items of interest to auto enthusiasts. (*Id.* ¶¶ 65-68, 116-19). Plaintiffs aver that they abided by Facebook's and Instagram's Terms of Use and Community Guidelines and Standards. (*Id*. ¶¶ 64, 68, 115, 119).

As further alleged in the SAC, beginning in January 2020, Facebook and Instagram suppressed, suspended, and/or deleted the accounts of Armslist, Gibbon, and Varney on these social media platforms because of mounting pressure and governmental animus motivated by contrary political and ideological views, and by Gibbon's common ownership of both Armslist and Torquelist. (Docket No. 1-5, ¶¶ 69-73, 91, 96, 120-27, 149-52). Plaintiffs allege that the suppression, suspension, and deletion of their Facebook and Instagram accounts caused them to be "damaged in an amount not greater than $74,999.99" and further stipulate that "the amount of

3

controversy in this case . . . is no greater than $74,999.99." (*Id.* ¶¶ 226, 234, 240, 254, 274, 294, & at 65-68).

On December 30, 2021, less than thirty (30) days after receiving the SAC, Defendants filed a Notice of Removal seeking to invoke this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). (Docket No. 1). The parties do not dispute their diversity of citizenship, but they do dispute whether the amount in controversy exceeds $75,000 as required by 28 U.S.C. § 1332. Plaintiffs consequently filed their pending Motion for Remand, contending that Defendants' Notice of Removal was untimely and that the amount in controversy is below the requisite statutory threshold to establish jurisdiction. (Docket No. 11). Plaintiffs' motion also asks the Court to abstain from exercising its jurisdiction. (*Id.*). Finally, Plaintiffs seek an award of attorneys' fees and costs. (*Id.*). For the reasons discussed below, the Court finds that Defendants did timely file their Notice of Removal, but that the amount in controversy does not exceed the $75,000 threshold required to invoke this Court's jurisdiction. Additionally, the Court declines to award attorneys' fees and costs pursuant to 28 U.S.C. § 1447(c).

## II.  Legal Standard

Federal district courts have original jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a). A civil action initially filed in state court that meets these criteria may be removed to federal court pursuant to 28 U.S.C. § 1441.

The removal procedures are found in 28 U.S.C. § 1446. A defendant desiring to remove a civil action from state court to federal court shall file a notice of removal in the appropriate federal district court within 30 days of receipt of the initial pleading or within 30 days after receipt of "an amended pleading, motion, order or other paper from which it may first be ascertained that the

case is one which is or has become removable." 28 U.S.C. § 1446(b).  The notice of removal must contain "a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a).  "By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014).  "Congress, by borrowing the familiar 'short and plain statement' standard from Rule 8(a), intended to 'simplify the pleading requirements for removal' and to clarify that courts should 'apply the same liberal rules [to removal allegations] that are applied to other matters of pleading.'"  *Id.* (quoting H.R. Rep. No. 100-889, at 71 (1988) (additional quotation marks omitted)) (alterations in original).

> Following the filing of a notice of removal:
>
> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).  If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.  An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.

28 U.S.C. § 1447(c).  "[A]ll doubts should be resolved in favor of remand."  *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987), *cert. dismissed sub nom. American Standard, Inc. v. Steel Valley Auth.*, 484 U.S. 1021 (1988).

Plaintiffs timely filed their Motion for Remand on January 28, 2022, contending that Defendants' Notice of Removal was untimely and that the amount in controversy is insufficient to invoke this Court's diversity jurisdiction.  (Docket No. 11).

### III. Discussion

#### A. Timeliness

As set forth above, Defendants were required to file their Notice of Removal within 30 days of receipt of the initial pleading or within 30 days after receipt of "an amended pleading,

motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b). Plaintiffs contend that Defendants' removal deadline was October 29, 2021, which was 30 days after Facebook received the FAC. Defendants did not file their Notice of Removal at that time, but instead filed preliminary objections in state court. Defendants did not file their Notice of Removal until after receiving Plaintiffs' SAC. Defendants contend that receipt of the SAC is the first instance when it became unequivocally clear and certain that the amount in controversy purportedly exceeded the statutory requirement for diversity jurisdiction. Prior to receipt of the SAC, Defendants contend they could only postulate as to whether the value of the requested injunctive relief, in the absence of any other claims for relief, exceeded $75,000. The Court agrees. Receipt of Plaintiffs' SAC is the first instance when Defendants received a pleading, motion, order, or other paper that quantified the value of Plaintiffs' claims such that Defendants could ascertain that the amount in controversy might exceed the jurisdictional threshold. *See Boggs v. Harris*, 226 F. Supp. 3d 475, 488-490 (W.D. Pa. 2016). Consequently, the Court finds Defendants' Notice of Removal to be timely.

**B.     The Amount in Controversy**

Plaintiffs also contend that their civil action is not removable because they stipulated that the amount in controversy is less than the statutory threshold of $75,000. Under 28 U.S.C. § 1446(c)(2):

> If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that—
>
> (A) the notice of removal may assert the amount in controversy if the initial pleading seeks—
>
> (i) nonmonetary relief; or
>
> (ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and

>    (B) removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

The Supreme Court interpreted 28 U.S.C. § 1446(c)(2) in *Dart Cherokee Basin Operating Co., LLC*, explaining:

>    When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith. Similarly, when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court. . . .
>    If the plaintiff contests the defendant's allegation, § 1446(c)(2)(B) instructs: "[R]emoval . . . is proper on the basis of an amount in controversy asserted" by the defendant "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" the jurisdictional threshold. This provision, added to § 1446 as part of the Federal Courts Jurisdiction and Venue Clarification Act of 2011 (JVCA), clarifies the procedure . . . when a defendant's assertion of the amount in controversy is challenged. In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied.

574 U.S. at 87-88 (internal citations omitted). Moreover, the burden of persuasion for establishing diversity jurisdiction remains on the party asserting it. *See Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010); *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007). And, when challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof. *See Hertz*, 559 U.S. at 96-97.

Here, because Plaintiffs seek both monetary damages and nonmonetary remedies[2] in the form of declaratory and injunctive relief, Defendants assert in their Notice of Removal that the amount in controversy exceeds $75,000 under 28 U.S.C. § 1332(a). (Docket No. 1, ¶¶ 14-36;

---

[2] 28 U.S.C. § 1446(c)(2)(A)(ii) may also permit Defendants to assert the amount in controversy in their Notice of Removal because Pennsylvania law does not allow a demand for a specific sum involving unliquidated damages pursuant to Pennsylvania Rule of Civil Procedure 1021(b). *See also Vizant Technologies, LLC v. Ocean State Jobbers, Inc.*, Civ. Action No. 14-6977, 2015 WL 500480, at *2 (E.D. Pa. Feb. 5, 2015) ("Rule 1021(b) of the Pennsylvania Rules of Civil Procedure does not allow parties seeking unliquidated damages to 'claim any specific sum.'" (quoting Pa. R. Civ. P. 1021(b))).

Docket No. 1-5, ¶¶ 179-209, 241-53). In doing so, Defendants contend that Plaintiffs' stipulated damages of $74,999.99 only encompasses their breach of contract, unjust enrichment, and promissory estoppel claims at Counts Two, Three, and Four of the SAC, but excludes the value of their equitable claims at Count One. Defendants further contend that Plaintiffs' nonmonetary claims at Count One have an independent value of more than the two-cent difference between Plaintiffs' stipulated amount in controversy and the requisite jurisdictional threshold of $75,000.00. (Docket No. 1, ¶¶ 16, 18, 19, 23-30). Plaintiffs, however, contest Defendants' allegations concerning the amount in controversy, contending that the value of all their claims, including their various claims for equitable relief, is derived from the same harm and is not worth more than the stipulated sum of $74,999.99 in the aggregate. (Docket No. 17 at 7).

When a party seeks injunctive relief, "the amount in controversy is measured by the value of the right sought to be protected by the equitable relief." *In re Corestates Trust Fee Litig.*, 39 F.3d 61, 65 (3d Cir. 1994). Indeed, the amount in controversy "is measured by the value to plaintiff to conduct his business or personal affairs free from the activity sought to be enjoined." *Id.* (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178 (1936)). In the case at bar, Plaintiffs aver that they had a commercial relationship with Defendants, who unlawfully prevented them from continuing to use Defendants' Facebook and Instagram platforms for both commercial and personal purposes. (Docket No. 1-5, ¶ 178). Plaintiffs also stipulate that the amount in controversy does not exceed $74,999.99. (*Id.* at 65-68).

Plaintiffs contend that their stipulations dispositively establish that the amount in controversy does not exceed the jurisdictional threshold. Defendants seek to disregard Plaintiffs' stipulations, contending that Plaintiffs' equitable claims at Count One have an independent and distinct value that takes the total amount in controversy above and beyond Plaintiffs' stipulated

8

amount.  The Court finds both contentions to be incorrect.  While Plaintiffs' stipulations are important, they are not dispositive of the amount in controversy because 28 U.S.C. § 1446(c)(2)(B) requires the parties to submit proof and for the Court to make that determination by a preponderance of the evidence.  *See Dart Cherokee Basin Operating Co., LLC*, 574 U.S. at 88-89.  Defendants, as the parties seeking to invoke the Court's jurisdiction, shoulder the burden of establishing that the amount in controversy exceeds $75,000.  Defendants have not satisfied their burden for the following reasons.

First, a careful review of the SAC reveals that the remedies Plaintiffs seek at Count One are duplicative of the remedies they seek at Counts Two, Three, and Four, even though those remedies are derived from distinct legal theories.  The Court finds that the amount in controversy is not enlarged by the inclusion of such overlapping remedies.

Second, even if the equitable relief sought by Plaintiffs at Count One is somehow distinct from and not subsumed by the various forms of relief sought pursuant to Plaintiffs' other claims, Defendants nonetheless mistakenly presume a value for those claims at Count One that extends beyond the value of Plaintiffs' other claims and thus, when viewed in the aggregate, surpasses the jurisdictional threshold.  In support of this argument, Defendants cite *Spock v. David*, 469 F.2d 1047, 1053 (3d Cir. 1972), for the proposition that freedom of speech claims are presumptively capable of valuation sufficient to satisfy the $10,000 jurisdictional threshold then in effect in 1972, and that, *a priori*, Plaintiffs' Pennsylvania constitutional claims are presumptively worth enough to bridge the gap between Plaintiffs' stipulated amount in controversy and the requisite jurisdictional threshold currently in effect.  However, *Spock* is of no help here because the district court in that case presumed that jurisdiction "was not in issue" during a hearing on a motion for preliminary injunction when "no effort was made to introduce evidence directed specifically to the

value of the claimed rights." *Id.* at 1052. The Third Circuit proceeded on the "same assumption" and rejected the jurisdictional amount contention raised on appeal as a basis for denial of preliminary injunctive relief, though it did affirm the district court's denial of preliminary injunctive relief on the merits. *Id.* at 1052-53. Unlike *Spock*, the case at bar is subject to the preponderance of the evidence standard in 28 U.S.C. § 1446(c)(2) and involves a stipulation as to the amount in controversy which the parties dispute.

Third, in their attempt to establish that the amount in controversy exceeds $75,000, Defendants have proffered information, uncontroverted by Plaintiffs, that Armslist charges between $3.99 and $6.99 per month for personal use memberships, and $30 per month for business/commercial use memberships, to argue that Plaintiffs' direct advertising and customer engagement on Facebook and Instagram could garner sufficient revenue-producing memberships to surpass $75,000 when considered in conjunction with the value of Plaintiffs' other claims. (Docket No. 16-1 at 5; Docket No. 16-2). However, the number of Armslist's personal use and business/commercial use members, the number of Facebook and Instagram users who interact with Plaintiffs on those platforms, and the plausible amount of revenues forgone or lost from Defendants' allegedly unlawful conduct is undiscernible on the current record before the Court.

There simply is no evidentiary basis upon which the Court may conclude that Plaintiffs' stipulated amount in controversy is understated or otherwise incorrect. Consequently, Defendants have not established by a preponderance of evidence that the amount in controversy exceeds the $75,000 required to invoke this Court's jurisdiction.[3] Accordingly, the Court shall grant Plaintiffs' motion to remand this action to the Westmoreland County Court of Common Pleas.

---

3  Plaintiffs alternatively ask the Court to abstain from exercising jurisdiction. The Court need not address this argument because the Court finds that it does not have jurisdiction.

### C. **Attorneys' Fees**

Plaintiffs also seek an award of attorneys' fees and costs. In the absence of unusual circumstances, Courts in their discretion may award attorneys' fees and costs pursuant to 28 U.S.C. § 1447(c) when remanding a case to state court only where the removing party lacked an objectively reasonable basis for seeking removal. *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Here, Defendants ascertained, albeit incorrectly, that the amount in controversy exceeded $75,000 based upon the quantification of monetary damages that Plaintiffs never articulated until filing the SAC. The SAC triggered Defendants' attempt at removal and provides an objectively reasonable basis upon which Defendants sought to invoke this Court's jurisdiction. Under these circumstances, Plaintiffs' request for an award of attorneys' fees and costs shall be denied.

### IV. **Conclusion**

For the foregoing reasons, Plaintiffs' Motion for Remand shall be granted in part and denied in part. The Court shall grant Plaintiffs' Motion to the extent it seeks remand of this action to the Court of Common Pleas of Westmoreland County, Pennsylvania. The Court shall deny Plaintiffs' Motion to the extent it seeks an award of attorneys' fees and costs.

An Order consistent with this Memorandum Opinion follows.

/s/ *W. Scott Hardy*
W. Scott Hardy
United States District Judge

Dated: August 16, 2022

cc/ecf: All counsel of record